## THURSTON *v.* KENNETT.

Wherever the pleadings admit the plaintiff's whole cause of action, and attempt to avoid it by the introduction of new matter, the defendant has the right to begin and close. But where the whole is not admitted, and any thing is left for the plaintiff to show, the right to commence and close is with him.

In replevin, the defendant avowed the taking in a certain lot, and alleged that it was his soil and freehold. The plaintiff replied that the soil and freehold was in one T., and tendered an issue thereon, which the defendant joined. *Held*, that the plaintiff had the right to the opening and close.

When a mortgage of real estate is taken by an executor to secure a note belonging to his estate, any foreclosure that may be made upon the same, is for the benefit of the estate or the legatees or heirs of the testate, under the direction of the probate court in carrying out the provisions of the will, according to law.

The foreclosure of such a mortgage passes no interest to the executor beyond his official character, and vests in him no title that can be transmitted to his heirs.

REPLEVIN, for certain cattle alleged to have been illegally taken and impounded by the defendant.

The defendant avowed the taking in the westerly half of lot number 50, in the south division of lots in Eaton, in this county; and set forth in his avowry that said westerly half was his soil and freehold; that the cattle were there feeding upon his grass &c., and he impounded them as he well might; and concluded by praying judgment for his damages, &c., to be adjudged to him.

The plaintiff replied, that the soil and freehold was in one Josiah Thurston, by whose permission the cattle were in the close, and not in the defendant's, and tendered an issue to the country, which was joined by the defendant.

At the opening of the case, the defendant claimed the right to commence and close, but the Court ruled otherwise; to which ruling the defendant excepted.

The plaintiff, to show his right to the land, produced, first, a quitclaim deed from George Walker to John Pierce, dated February 11, 1814, conveying these premises and sundry other lots in mortgage, the condition of which was as follows: " Whereas

I, the said George, am indebted to the said John in a note of hand dated the seventh day of July, 1810, promising to pay twelve hundred twenty-five dollars forty-eight cents, with interest; which said note I gave to Joseph Pierce, of Alton, Esquire, deceased, and upon the estate of which said deceased the said John Pierce is executor, — now if I shall well and truly pay the said note to the said John, or his assigns," &c.

The plaintiff next produced the will of said John Pierce, which was dated February 24, 1814, and proved the 24th of June, 1814, appointing his wife Mary, and his sons, Mark W. and Joshua, executors of his will.

These executors foreclosed the Walker mortgage by a suit in their names, as executors of said John Pierce, on which judgment was recovered in August, 1815, for possession of all the property contained in the mortgage, unless the debt should be paid within a specified time. At the expiration of the time, being October 24, 1815, an execution was taken out and returned at the January term, 1816, in part satisfied, when an alias was issued for another piece of land set forth in the judgment, and returned at the following August term. At that term a pluries execution was issued, and returned at the following term, as having been satisfied upon the land in dispute. The note on which this mortgage was founded, did not come up with the proceedings to foreclose, and the defendant excepted to the judgment on that account.

The defendant contended that these executors had no right to foreclose this mortgage as the property of John Pierce; that the condition of the mortgage showed the right to be in the heirs of Joseph Pierce; and that the delivery of possession to the executors, vested the seisen in the heirs of Joseph Pierce. The defendant also contended that the issuing of the alias and pluries executions was illegal, and the set-off consequently so.

The will of said John Pierce contained a provision that his property, except sundry legacies, be distributed according to law.

To the pluries execution was attached a copy of a power of attorney from said Mark W. Pierce, one of the executors of John, to Nehemiah Eastman, Esquire, for him to receive possession of

the land, with power of substitution; and on the back of said power was the appointment, by said Eastman, of John March, to act in his stead. And the return on the execution showed that possession was given by the officer to said March. This power of attorney and substitution were excepted to by the defendant, because the original was not produced, nor its execution proved, and because the power was insufficient in point of law.

The plaintiff then produced the will of said Mark W. Pierce, dated September 27th, 1844, and proved February 18th, 1846, making Joshua W. Pierce residuary legatee and executor. The land in controversy was not specifically devised in the will. The plaintiff next introduced a warrantee deed from Joshua W. Pierce, and Daniel H. Pierce, a brother of Mark W. Pierce, to Josiah Thurston, dated March 19, 1847, conveying the premises in dispute. This deed contained a proviso, that the grantors, in case of any defect in the title, should not be liable beyond $100, being the consideration of the deed. The plaintiff then offered evidence tending to show that the premises were occupied by the tenants of the Pierces, by cutting, fencing, and clearing upon the same from 1827 to 1839, at which time from twelve to twenty acres were cleared. It also appeared that the land was taxed as non-resident land, to the name of George Walker, for a number of years prior and subsequent to 1827. The plaintiff showed no possession of the property from 1839, till the date of said Thurston's deed in March, 1847. Thurston then took possession, and the cattle of the plaintiff were driven from the premises a few weeks after, by the defendant, having been put there to pasture by said Thurston.

The defendant introduced evidence tending to contradict the evidence of the plaintiff, as to the possession of the tenants of the Pierces. He also introduced a quitclaim deed from Abraham Colby, collector of Eaton, dated September 16th, 1827. The words and figures, " No. 50, South," appeared to be interlined in the deed, in the handwriting of Colby. The witness to the deed, however, did not recollect any thing about the interlineation.

This deed was excepted to by the plaintiff, as not competent

to go to the jury, without further proof of the authority of the collector to make the deed, and also because of the interlineation. It appeared that Colby was acting collector of Eaton, in 1826. The records of the town were produced by the plaintiff and did not show any property advertised for the payment of taxes in 1825, 6, or 7, nor of the sale of this lot. It appeared from their examination, also, that the premises in dispute — the westerly half of lot 50 — were taxed in the non-resident list to George Walker, in 1824, 5, 6, 7, and 8.

The defendant introduced evidence tending to show acts of ownership over said property, and possession from the spring of 1829 till 1833, and entire occupation from 1839 to the date of the Thurston deed; also, acts of ownership, by fencing, &c., after the date of Thurston's deed till the taking of said cattle, which was on the first day of June, 1847.

A verdict was taken, by consent, for the plaintiff, on which judgment was to be entered, or the verdict set aside and a new trial granted, according to the opinion of the Court upon the whole case. And the questions arising upon said case were transferred to this Court for determination.

*Emerson*, for the defendant.

I. The ruling of the Court was not right as to burthen of proof, for the burthen of proof is always with the party who takes the affirmative in pleading. *Phelps* v. *Hartwell*, 1 Mass. Rep. 7; *Blaney* v. *Sargeant*, 1 Mass. 335; *Buckminster* v. *Perry*, 4 Mass. 593; *Philips* v. *Ford*, 9 Pick. Rep. 39.

II. The deed of J. W. Pierce and D. H. Pierce to N. C. Thurston was void. A deed of land of which the grantor is disseized is void. U. S. Dig. Vol. 2, § 54; see also Title Deed, § 685; 1 Root, 402; Ib. 199; *Jackson* v. *Dennett*, 9 Johns. Rep. 100; 9 Johns. Rep. 55; 5 Johns. Rep. 489; 1 Johns. Rep. 159; 2 Cowen's Rep. 183. The deed being a quitclaim, conveys nothing.

III. The deed of George Walker to John Pierce, is a quitclaim, and conveys nothing. Walker had no title, nor possession. Were Walker's deed a warrantee and possession in him, it would

Thurston v. Kennett.

vest nothing in John Pierce, but in Joseph Pierce, for the debt is to Joseph Pierce, and the mortgage is but an incident to the debt. *Briggs* v. *Fish*, 2 Chip. 100 ; *Jackson* v. *Willard*, 4 Johns. Rep. 41; *Bell* v. *Morse*, 6 N. H. Rep. 205 ; *Ellison* v. *Daniels*, 11 N. H. 274.

IV. Nothing passed to John Pierce's executors, but to the representatives of Joseph Pierce. *Gibson* v. *Bailey et al.*, 9 N. H. Rep. 168. The plaintiff in no way connects himself with Joseph Pierce's title, and is a stranger. A tenant in possession may support trespass against a stranger. The defendant, as tenant, shows a possession of more than twenty years under color of title, and his title is good, not only against strangers, but an old title.

V. The books should not have been introduced as to the taxing to Walker, being cumulative evidence, to rebut the defendant's title.

*Hobbs* and *Sanborn*, also for the defendant. John Pierce was, as executor, trustee of the estate of Joseph Pierce. When he died his authority ceased, and he had no authority to appoint another. Mary Pierce, the wife of John, and his sons, Mark and Joshua, executors of John Pierce's will, did not become executors of the will of Joseph Pierce. N. H. Laws, 200, ed. 1815.

The property in the note vested in the heirs or devisees of Joseph Pierce. The interest in the mortgage followed the note, and vested in the same individuals. *Southerin* v. *Mendum*, 5 N. H. Rep. 420.

Administration on the estate of Joseph Pierce with the will annexed, should have been granted to some person to foreclose the mortgage. N. H. Laws, 200, ed. 1815.

It does not appear that John Pierce was heir at law or devisee of Joseph Pierce.

No judgment could have been rendered on the mortgage without the note, and it not having been produced, it is to be presumed that it was paid.

Possession was given to John March. The original power and substitution should have been produced, or their loss accounted

for, before copies could be used. There should have been proof that they existed as genuine instruments. 1 Starkie, Ev. 292.

If the executors of John Pierce had authority to foreclose the mortgage, still one executor had not authority to appoint an attorney to receive possession. The three must join in the appointment. *Green* v. *Miller*, 6 Johns. Rep. 39; *Grindley et al.* v. *Barker et als.* 1 Bos. & Pul. 229; *The King* v. *Beester*, 3 Term'. Rep. 592.

The deed, from Colby to the defendant, was sufficient to show the extent of the defendant's possession. If an interlineation appear in a deed, and there be no evidence to show how it was done, it will be presumed to have been done before the execution. 2 Stark. Ev. 327.

The defendant had the better possession. When the deed was made to Josiah Thurston, his grantors had neither title nor possession.

*Dearborn,* (with whom was *J. Eastman,*) for the plaintiff. The defendant alleges that he took the cattle doing damages on the westerly half of lot No. 50, south division, in Eaton; and alleges the close to be his soil and freehold, and not the freehold of the plaintiff.

The plaintiff alleges the close to be the soil and freehold of one Josiah Thurston, by whose leave he put the cattle into the close, and not the freehold of the defendant. The defendant claimed the right to commence and close. The Court thought otherwise.

In replevin, it is admitted that the party instituting the suit is not alone the actor. It is a proceeding *in rem.* It resembles a libel in a Court of Admiralty, and the parties are both claimants. *Brown* v. *Smith,* 1 N. H. Rep. 38. In this case the plaintiff affirms the close to be Josiah Thurston's soil, and not the soil of the defendant. This is the issue, and the plaintiff to be successful must maintain the affirmative of the issue on his part. Such being the case, it seems to be matter of strict propriety, that the plaintiff commence and close. He must, in the course of the trial, exhibit his title to the premises. The most fit time for that is

after reading the writ, &c. There is no good reason why he should be stopped at this point, to let the defendant produce his title to the close, and then the plaintiff commence again and lay the remaining part of his evidence before the jury. It would seem absurd to establish such a practice. The Court will not, for this, order a re-hearing of the action.

The second exception taken by the defendant is, that the executors had no right to foreclose the mortgage as the property of John Pierce, and that the delivery of possession vested seisin in the heirs of Joseph Pierce.

The judgment shows that the plaintiffs commenced the action as the representatives of John Pierce, and that their whole proceedings are in that capacity. The judgment is therefore a complete answer to the defendant's exception. He is estopped thereby from availing himself of such exception. Walker appeared and answered to the action and made defence, and judgment was rendered against him. Does it now lie in the power of this defendant to say that the judgment is not valid? The defendant has no right to except to the regularity of the issuing of the plus execution, inasmuch as he does not pretend to draw his title from Walker. The record of judicial proceedings are the highest evidence. No other evidence whatever can be admitted to contradict them or vary their sense. C. L. 117, 260; Bull. Nisi Prius, 221, § 9; 1 Strange, 210, cited in 3 Dane's Ab. 509, ch. 95; *Croswell* v. *Brynes*, 9 Johns. Rep. 287; *Read* v. *Jackson*, 1 East, 355; *Leach* v. *Armetage*, 2 Dall. 125; 1 Phil. Ev. 273; *Scott* v. *Sherman*, 2 Black. 979.

Implicit credit ought to be given to any judgment in a Court of record, which has competent jurisdiction of the subject-matter. Consequently it was not necessary to produce a copy of the note on which the mortgage was founded. Judgment having been rendered, is incontrovertible evidence of the matter therein set forth until reversed.

The defendant's exception to the power of attorney to Eastman, and Eastman to March, cannot avail him; because they were strictly right and according to legal requirements. Co-executors are regarded in law as an individual person, and the acts

of any one of them in respect to administration of the effects, are deemed to be the acts of all; for they have a joint and entire control. A grant or surrender of the term by one executor shall be equally available. A release of debt by one shall be equally valid and shall bind the rest. If one executor confess a judgment, the judgment shall be against all. Toller on Executors, 282, and authorities there cited; 3 Bacon's Ab. 32; 1 Roll. Ab. 924; Dyer, 23. And the powers of attorneys annexed to the plus execution, having been executed and returned to Court with the executions and put upon the record, thereby became matter of record and proper for the clerk to certify as such. They were part of the record, and consequently admissible in evidence.

An execution levied on land gives possession. 1 Johns. Rep. 45, cited 4 Dane's Ab. 34.

If a plaintiff be in quiet possession of land three years, and defendant afterward enter without color of right, the plaintiff has sufficient possession to recover against the defendant. *Jackson* v. *Hazen*, 2 Johns. Rep. 22.

EASTMAN, J. The plaintiff had the right to commence and close. This precise question, it is believed, was settled in *Belknap* v. *Wendell*, 1 Foster's Rep. 175.

The general rule is, that the party who has the affirmative of the issue to maintain, shall begin and close. This rule, however, has been held subject to several limitations, and been more or less fluctuating both in England and America; so much so, that it would be difficult, perhaps, at the present time, to lay down any definite rules of practice as well sustained by authority, which could not be contradicted by other authority equally respectable. Some jurisdictions hold it to be a matter of right, while others decide that it rests in the legal discretion of the Court at the trial.

Many authorities might be cited where this question has been raised. Among some of the most prominent are — *Young* v. *Bairner*, 1 Esp. 103; *Curtis* v. *Wheeler*, 3 Carr. & Payne, 340; *Soward* v. *Leggatt*, 7 C. & P. 613; *Fowler* v. *Coster*, 1

Mood. & M. 243; *Note of Reporter*, 1 Mood. & M. 278, 281; *Roby* v. *Howard*, 2 Starkie's Rep. 555; *Lacon* v. *Higgins*, 3 Starkie's Rep. 178; *Cooper* v. *Wakeley*, 3 Carr. & Payne, 474; *Comstock* v. *Hadlyme*, 8 Conn. Rep. 261; *Scott* v. *Hull*, 8 Ib. 296, 303; *Davis* v. *Mason*, 4 Pick. 156; *Ayer* v. *Austin*, 6 Pick. 225; *Brooks* v. *Barret*, 7 Pick. 94.

Wherever the pleadings admit the plaintiff's whole cause of action, and attempt to avoid it by new matter, the defendant has the right to begin and close. But where the whole is not admitted and anything is left for the plaintiff to show, the right to commence and close is with him.

The defendant avowed the taking in the westerly half of lot No. 50, in the south division of lots in Eaton, and alleged that said westerly half was his soil and freehold. The plaintiff replied, that the soil and freehold was in one Josiah Thurston, and tendered an issue thereon; which issue the defendant joined. The question then, was upon the soil and freehold of Thurston, and the affirmative of the question was with the plaintiff. He had tendered the issue, and was bound to make it out, and thus had the right of opening and closing the case.

The title, upon which the plaintiff rests, commences with George Walker, who, in 1814, mortgaged the premises to John Pierce, the executor of the last will and testament of Joseph Pierce, to secure a note given to the said Joseph in his lifetime, and belonging to his estate. What the will of Joseph was, does not appear, and consequently we are left without any information as to the disposition that was to be made of his property. Had the note been specifically devised, it would no doubt have been passed over to the legatee, or had John any claim to it other than as executor, the mortgage would have been taken to him in his private capacity. We cannot infer, what does not appear, that this note belonged to any one, except to the estate; or that it could be legally appropriated for any purposes other than to pay the debts of the estate and carry out the provisions of the will. No steps were taken to collect the note or foreclose the mortgage during the lifetime of John; who himself made his will and died within a few months after the date of the mortgage.

He, by his will, ordered that his property, except sundry legacies, should be distributed according to law, and appointed his wife, Mary, executrix, and his sons, Mark W. and Joshua, executors of his will. It does not appear that any mention was made of this mortgage in his will; but his executors proceed to foreclose the same and obtain possession of the land. To the proceedings in this foreclosure, and to the manner of obtaining possession, several exceptions were taken upon the trial; but inasmuch as the decision of the case, in the view which the court have taken of it, does not require a particular examination of these exceptions, we pass them.

Assuming that the proceedings to foreclose were regular, if any right to the property thereby vested in the estate of John, Mark W. Pierce and Joshua Pierce, his sons, would take; since, by the will of John, his estate, excepting some legacies, was to be divided according to law. Mark W. Pierce subsequently died and made his brother Joshua residuary legatee and executor. In his will no mention is made of the premises, and for aught that appears in the case, Joshua would be the owner of whatever right his brother Mark W. had therein. Joshua, and his brother Daniel H. Pierce — who would inherit from his father John, under his will, — then conveyed to Josiah Thurston, whose title the plaintiff sets up to sustain his action. Consequently as Josiah Thurston derives his title from John Pierce, upon the sufficiency of Pierce's title depends that of Thurston. If, then, John Pierce ever had any legal interest in the premises which could be transmitted to his heirs, the plaintiff sustains the issue on his part.

This note, which formed the foundation of the mortgage, belonged to the estate of Joseph Pierce. If no mortgage had been given, the proceeds of the note, if not required to pay debts and legacies and expenses of settling the estate, would have gone to the heirs. The simple act of taking the mortgage does not change the property, nor can it thereby be diverted from its legal destination. A mortgage, for the purpose of protecting the rights of the mortgagee against waste, and of securing to him the rents and profits of the land, is regarded as passing the

title to the premises; and unless there be a stipulation in the deed to the contrary, the mortgagee may enter upon the premises at once. But viewed as a security for the debt, it is a mere incident to the debt, and dependent upon that for its vitality. It follows the note, and when that is paid, it ceases to have any effect. *Southerin* v. *Mendum*, 5 N. H. Rep. 429.

This mortgage was given to secure the note as the property of the estate, and all proceedings for its foreclosure, must be regarded as for the benefit of the estate. John Pierce, had he lived and foreclosed the mortgage himself, could have acquired no right to the property beyond what attached to him by virtue of his office as executor. The foreclosure of the mortgage would have vested the legal estate in the heirs of Joseph. *Gibson et al.* v. *Bailey et al.*, 9 N. H. Rep. 168. John could have acquired no personal right to the premises, and nothing would have vested in him which could pass to his representatives. After his decease, the proper course to close up the estate of Joseph, would have been for an administrator *de bonis non*, with the will annexed, to have been appointed. The mortgage could then have been regularly foreclosed and the property applied according to law under the direction of the Probate Court. But even if the executors of John had the right to foreclose the mortgage, still the interest in the premises after the foreclosure would be in the estate or the heirs of Joseph. It could not go to the estate of John or to his heirs. As, therefore, John Pierce's title to the premises is without foundation, Joseph Thurston's must also be; and, consequently, the plaintiff fails to maintain the issue by virtue of any legal title in Thurston.

The possession of the premises has been conflicting. Taking the most favorable view for the plaintiff, which the evidence presents, it appears that the defendant was in exclusive possession, under color of title, from 1839 to 1847, the date of the Thurston deed; that the Pierces had possession twelve years, from 1827 to 1839, and that after the date of the Thurston deed in March, 1847, the possession was mixed. Neither party has shown sufficient evidence to gain title by adverse possession; and inasmuch as the defendant was in possession under color of title

14 *

Thurston *v.* Kennett.

when Thurston took his deed, Thurston's possession after that, unless it be such as to oust the defendant, can avail him nothing without a legal title. As the plaintiff, therefore, fails to show any title in Thurston, either by deed or possession, the verdict must be set aside, and a

*New trial granted.*