476 F.2d 610
 73-1 USTC P 9440
 STATE OF NEW JERSEY, Plaintiff-Appellee,
v.
Harry Joseph KAISER and Harry J. Kaiser, as Administrator of
the Estate of Susan Kaiser, Deceased, Defendants.
United States of America, Intervenor-Appellant.
 No. 72-1075.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) Feb. 13, 1973.
Decided March 13, 1973.
 
 Herbert J. Stern, U. S. Atty., Newark, N. J., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwax, Bennett N. Hollander, Thomas H. Boerschinger, Tax Div. Dept. of Justice, Washington, D. C., for appellant.
 Walter J. Dorgan, Gross, Demetrakis, & Donohue, Hackensack, N. J., Albert S. Gross, of counsel, for appellee.
 Before VAN DUSEN and ADAMS, Circuit Judges, and BRODERICK, District Judge.
 OPINION OF THE COURT
 PER CURIAM:
 
 
 1
 The conflicting claims of the United States and Bergen County, New Jersey to a large sum of money, seized during a search of premises suspected of being the site of a gambling operation, form the basis of this appeal. Central to the resolution of these competing claims is the determination whether that fund, to wit $265,000, represents an instrumentality of illegal activity and thus contraband, forfeitable to the state or county, or an accumulation of funds or profits derived from illegal activity, and thus subject to a lien asserted by the United States.
 
 
 2
 The facts giving rise to this controversy are fully explicated in the opinion of the district court, 338 F.Supp. 42, and need only summarization at this point.
 
 
 3
 On July 14, 1960, a raid pursuant to a search warrant was conducted on a house in North Arlington, New Jersey. This house was occupied at that time by Harry Kaiser, Susan Kaiser and Edna Kaiser. The search of the first floor of the house uncovered numbers slips, gambling paraphernalia and a sum of cash totaling slightly more than $18,500. The second floor of the house contained two bedrooms. The search of one of the bedrooms produced $3,650. in a chest of drawers. Further search of that room revealed a fireproof steel strongbox. Because the Kaisers did not have a key for it, the police had to force open the box. When opened, the box was found to contain $265,000. Beyond this large sum of money, the search produced clothing and two prescriptions, indicating that this bedroom had been occupied by one Joseph Moriarity. Later investigation revealed that Moriarity had in his possession keys which would open the strongbox.
 
 
 4
 Joseph V. Moriarity has an extensive record of involvement in illegal gambling. See Farley v. $168,400.97, 55 N. J. 31, 259 A.2d 201 (1969). In August, 1947, a federal income tax delinquency was assessed against Moriarity and demand for payment made. In 1955, a judgment on this delinquency was entered. Thus, the Federal government has a lien on property belonging to Moriarity. And the claims of the Federal government exceed $265,000.
 
 
 5
 New Jersey has a statutory schema requiring forfeiture of certain seized contraband. N.J.Stat.Ann. Sec. 2A:152-6 provides that, when seized, "any furniture, implement, device or machine, made or used for the purpose of gambling" becomes the property of the county. It is the county's burden, however, to prove illegal use. Krug v. Board of Chosen Freeholders, 3 N.J.Super. 22, 65 A.2d 542 (App.Div.1949). N.J.Stat.Ann. Sec. 2A:152-7, enacted after 152-6, permits the assumption that if money is seized in connection with an arrest for violation of the gambling laws the money is prima facie contraband and forfeitable. Both statutes require, however, that there be an active employment of the money in a gambling operation. See Krug v. Board of Chosen Freeholders, supra.
 
 
 6
 The district court, relying on Spagnuolo v. Bonnet, 16 N.J. 546, 109 A.2d 623 (1954), stated its belief that the source of the money, not the present utilization of the sum, determines whether it is an element in a gambling enterprise for the purpose of the state forfeiture. Finding that the money was the product of a gambling enterprise, the district court determined that the money was forfeitable. Therefore, it reasoned, the money was not an asset of Moriarity's and hence not subject to the lien of the Federal government. Thus, the district court held that the state's claim to the money was to prevail.
 
 
 7
 The district court issued its opinion on October 15, 1971. On January 25, 1972, this Court decided the case of Stapleton v. $2,438,110.[1] Stapleton also involved Moriarity, his tax lien, and money found belonging to him. In Stapleton, as here, there were competing claims for the money, the state claiming that the money was forfeitable under the state statutory arrangement, the Federal government asserting its rights under the tax lien. Implicit in the opinion of the Court and explicit in the concurring opinion of Judge Adams was the differentiation between funds seized which are actually in use in furtherance of a gambling operation and funds which have passed out of the operation and become accumulated profits. In holding that the funds in Stapleton were to go to the Federal government, that case makes clear that only funds actively used in a gambling operation are forfeitable to the state.[2]
 
 
 8
 The determinative issue thus can be stated fairly simply. If the $265,000. is money that is being used as an element in a gambling operation revealed in the search, then, pursuant to the New Jersey statutes, the money is forfeitable to the state. If, however, the money is not an element in the enterprise but "an accumulation of profits from gambling, 'the stake for which men gamble' or the product of gambling,"[3] following Stapleton, it is not subject to state forfeiture. If the money is forfeitable, the Federal lien does not attach because the fund cannot be deemed the property of Moriarity. On the other hand, if the sum is not forfeitable, then, assuming that the sum is Moriarity's,[4] it becomes subject to attachment by operation of the lien.
 
 
 9
 Our review of the findings of the district court indicates that the $265,000. was not actively used in a gambling operation but was an accumulation of profits or proceeds, of some enterprise, not necessarily the one revealed in the July 14, 1960 search. The numbers operation uncovered in the search of the Kaiser's house appeared to have receipts for the day totaling approximately $12,000. Uncontradicted expert testimony showed that the cash reserve, or "bank," necessary to support a numbers operation need be only one-half of the daily handle. Thus, the $265,000. clearly was not the "bank" of that operation. Indeed, the district court stated, "[I]t was accumulated out of illegal gambling operations. . . . The fact that the $265,000. may not have been used in the daily operation and financing of the gambling business being conducted in the Kaiser residence would in no way affect the presumption that the money was the proceeds of a gambling operation."[5]
 
 
 10
 Under our holding in Stapleton, these findings require that the fund be awarded to the United States under the lien against Moriarity rather than be forfeited to the state as contraband. Therefore, the judgment of the district court must be reversed.
 
 
 11
 The case will be remanded to the district court for the entry of a judgment in conformity with this opinion. Costs to be taxed to each side.
 
 
 
 [1]
 454 F.2d 1210 (3d Cir.), cert. denied, 409 U.S. 894, 93 S.Ct. 111, 34 L.Ed.2d 151 (U.S. Oct. 10, 1972)
 
 
 [2]
 The Stapleton opinion made reference to the decision of the district court in this case. Although the opinion states that the money seized in this case was "proven to be a part of a current gambling operation" our review of the record and the opinion of the district court indicate the contrary, as will be discussed infra
 
 
 [3]
 454 F.2d at 1222
 
 
 [4]
 As the Kaisers have disclaimed any rights, title or interest in the $265,000. there can be no question but that the sum is Moriarity's
 
 
 [5]
 State of New Jersey v. Kaiser, 338 F. Supp. 42, 45 (D.N.J.1971)