724 A.2d 680

**ONE 1995 CORVETTE VIN# 1G1YY22P585103433**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE.**

No. 63, Sept. Term, 1998.

Court of Appeals of Maryland.

Feb. 23, 1999.

M. Albert Figinski, Baltimore, Richard A. Finci, New Carrollton (Kenneth W. Ravenell, Harry Levy, Schulman, Treem, Kaminkow and Gilden, P.A., Baltimore), on brief, for petitioner.

Andrew H. Baida, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland; Patricia Jessamy, State's Atty. for Baltimore City, Rudolph F. Drayton, Assistant State's Attorney, Baltimore), on brief, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CATHELL, Judge.

Weldon Connell Holmes filed a petition for writ of certiorari with respect to a decision of the Court of Special Appeals that reversed the decision of the Circuit Court for Baltimore City suppressing evidence in a civil forfeiture case brought by the State's Attorney to seize petitioner's automobile. The issue presented in the petition is "[w]hether the Exclusionary Rule, based on the Fourth Amendment of the United States Constitution, applies in a civil forfeiture case in Maryland seeking the forfeiture of an automobile allegedly used in the drug trade."

## I. Facts

Based on an informant's tip, three veteran officers of the Baltimore City Police Department's Northwest District Drug Enforcement Unit were conducting a general surveillance on Parkview Avenue in Baltimore City when they observed petitioner park his 1995 Corvette in the area. During the surveillance, they observed another man, also unknown to them, hand petitioner a large black bag through the Corvette's window, after which petitioner drove away. Even though the officers at that time had no prior knowledge of petitioner's involvement with controlled dangerous substances, they believed petitioner had conducted a drug transaction with the other man. The officers followed petitioner, but lost him. A police helicopter, however, tracked petitioner and eventually other officers stopped him in the 300 block of East Cold Spring Lane. The drug enforcement officers arrived on the scene and approached petitioner.

One of the officers, explaining that he believed petitioner may have been involved in a drug transaction, asked about the contents of the bag. Petitioner responded that it contained gym equipment. The officer explained to petitioner that petitioner need not reveal the contents of the bag, but that he would request a drug-sniffing dog because of the earlier observations. Petitioner quickly opened and closed the bag. An officer observed a plastic bag inside the black bag, which he believed contained a controlled dangerous substance.

Petitioner was arrested on drug-related charges.[1] During the arrest, another officer took the black bag out of the car and looked inside. The bag contained approximately 500

---

1. The criminal charges against petitioner later were dropped by the State's Attorney prior to the preliminary hearing in the District Court. Respondent correctly asserts that because of the *nolle prosequi*, no judicial determination as to the validity of the stop, search, and arrest was made in the criminal proceeding. Respondent also asserts that the record does not reflect why the prosecutor in the criminal action decided to drop the case. At the forfeiture hearing, however, respondent's counsel admitted that the criminal prosecutor "was not sure whether or not she would be able to win on a motion to suppress."

grams of cocaine. The three officers also found a brown paper bag inside the car that contained smaller bags of cocaine totaling approximately forty-eight grams. The officers then seized the car.

Respondent, through the State's Attorney for Baltimore City, filed a forfeiture action in the Circuit Court for Baltimore City against petitioner on June 6, 1996, pursuant to Maryland Code (1957, 1996 Repl.Vol., 1998 Cum.Supp.),[2] Art. 27, section 297. That provision states in relevant part:

(b) *Property subject to forfeiture.*—The following shall be subject to forfeiture and no property right shall exist in them:

(1) All controlled dangerous substances . . .

(2) All raw materials, products and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled dangerous substance . . .

. . . .

(4) All . . . *vehicles . . . which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2) of this subsection* . . .

. . . .

(10) Everything of value furnished, or intended to be furnished, in exchange for a controlled dangerous substance in violation of this subheading, *all proceeds traceable to such an exchange* . . . . [Emphasis added.]

Respondent based its complaint on subsections (4) and (10). At the forfeiture hearing, petitioner initially moved to dismiss the case because, he alleged, the evidence necessary to prove respondent's case, the bags of cocaine, had been obtained in violation of the Fourth Amendment and thus should be suppressed under the "exclusionary rule." *See generally Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961);

---

**2.** Legislative changes to section 297 since 1996, when respondent initiated its case, have not substantially altered the relevant subsections.

*Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). After both parties argued their positions, the trial judge denied petitioner's motion. Petitioner made the same motion twice more during the hearing. The trial judge again denied each motion, but permitted a continuing motion for the record. At the conclusion of the hearing, the trial judge offered the parties the opportunity to submit written memoranda on the issue. Ultimately, the trial court ruled that a Fourth Amendment violation had occurred and the exclusionary rule would apply, thus suppressing the evidence from the forfeiture trial. The court then dismissed the case. Respondent filed a timely appeal, arguing that the exclusionary rule does not apply to forfeiture proceedings under section 297. The Court of Special Appeals reversed, *Mayor of Baltimore v. One 1995 Corvette,* 119 Md.App. 691, 706 A.2d 43 (1998), and we granted a writ of certiorari.

## II.  *Plymouth Sedan*

Central to this case is *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 702, 85 S.Ct. 1246, 1251, 14 L.Ed.2d 170 (1965), in which the United States Supreme Court held that the exclusionary rule applies to forfeiture proceedings "such as the one involved" in that case. In *Plymouth Sedan,* officers of the Pennsylvania Liquor Control Board stopped George McGonigle shortly after he drove his 1958 Plymouth sedan across the Benjamin Franklin Bridge into Philadelphia, Pennsylvania. The officers, positioned at the foot of the bridge in New Jersey, had followed Mr. McGonigle after observing that the rear of his Plymouth was "low in the rear, quite low." *Id.* at 694, 85 S.Ct. at 1247, 14 L.Ed.2d 170. During the stop, the officers searched the car without a warrant, finding thirty-one cases of liquor not bearing the necessary state tax seals. The officers arrested Mr. McGonigle.

The Commonwealth of Pennsylvania subsequently filed a petition for forfeiture of Mr. McGonigle's car based on a state statute that proclaimed "[n]o property rights shall exist in any ... vehicle ... used in the illegal manufacture or illegal

transportation of liquor ... and the same shall be deemed contraband and proceedings for its forfeiture to the Commonwealth may ... be instituted...." *Id.* at 694 n. 2, 85 S.Ct. at 1247 n. 2, 14 L.Ed.2d 170. Mr. McGonigle initially moved to dismiss the case, arguing that because the evidence necessary to prove the Commonwealth's case, the thirty-one cases of liquor, had been obtained in violation of the Fourth Amendment, they should be suppressed under the exclusionary rule. The trial judge granted the motion and dismissed the case. The Commonwealth appealed, and the Superior Court of Pennsylvania reversed the trial court. The Pennsylvania Supreme Court affirmed the Superior Court, holding that "even if the instant automobile had been illegally seized, such fact would not preclude the instant civil proceeding of forfeiture." *Commonwealth v. One 1958 Plymouth Sedan,* 414 Pa. 540, 547, 201 A.2d 427, 431 (1964), *rev'd,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). The United States Supreme Court "granted certiorari to consider the important question of whether the constitutional exclusionary rule enunciated in [*Weeks* and *Mapp* ] applies to forfeiture proceedings of the character involved here." *Plymouth Sedan,* 380 U.S. at 696, 85 S.Ct. at 1248, 14 L.Ed.2d 170 (citations omitted). The Court held "that the constitutional exclusionary rule does apply to such forfeiture proceedings," and reversed the Pennsylvania Supreme Court. *Id.*

In *Plymouth Sedan,* the Supreme Court relied heavily on *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886),[3] a case in which it was alleged that crates of plate glass

---

**3.** Part of the Court of Special Appeals's criticism of *Plymouth Sedan* is its "total reliance" on *Boyd,* which that court says "has been completely repudiated." *See One 1995 Corvette,* 119 Md.App. at 726, 706 A.2d at 61. First, we do not agree that *Plymouth Sedan* 's reliance on *Boyd* was "total." Second, *Boyd,* though rather limited by later Supreme Court cases, has not been *completely* repudiated. *See Fisher v. United States,* 425 U.S. 391, 407, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976) (*"Several of Boyd* 's express or implicit declarations have not stood the test of time." (emphasis added)). Its application of the Fifth Amendment to private papers has been greatly limited, *see generally Unnamed Attorney v. Attorney Grievance Comm'n,* 349 Md. 391, 708 A.2d 667 (1998), as

were imported without the payment of the proper customs duty. The statute in that case provided a criminal penalty of $50 to $5000, up to two years imprisonment, and forfeiture of the goods. The government instituted a civil *in rem* forfeiture action against the imported glass. Addressing the civil nature of the proceeding, the Supreme Court in *Boyd* explained:

If the government prosecutor elects to waive an indictment, and to file a civil information against the claimants,—that is, civil in form,—can he by this device take from the proceeding its criminal aspect and deprive the claimants of their immunities as citizens, and extort from them a production of their private papers, or, as an alternative, a confession of guilt? This cannot be. The information, though technically a civil proceeding, is in substance and effect a criminal one.... As, therefore, suits for penalties and forfeitures, incurred by the commission of offenses against the law, are of this *quasi* criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the fourth amendment of the constitution....

*Id.* at 633–34, 6 S.Ct. at 534, 29 L.Ed. 746, *quoted in Plymouth Sedan*, 380 U.S. at 697–98, 85 S.Ct. at 1249, 14 L.Ed.2d 170. The *Plymouth Sedan* Court made clear that, although *Boyd* involved evidence sought by subpoena, that factual difference was irrelevant because "the essential question is whether evidence[,] ... the obtaining of which violates the Fourth Amendment may be relied upon to sustain a forfeiture." *Plymouth Sedan*, 380 U.S. at 698, 85 S.Ct. at 1249, 14 L.Ed.2d 170. Going on to explain its holding, the Court in *Plymouth Sedan* reasoned that "[t]here is nothing even remotely criminal in possessing an automobile. It is only the alleged use to which this particular automobile was put that subjects Mr. McGonigle to its possible loss." *Id.* at 699, 85

---

has its application of the Fourth Amendment to subpoenas for private papers. *See Fisher*, 425 U.S. at 407, 96 S.Ct. at 1579, 48 L.Ed.2d 39. *Boyd*'s discussion of forfeiture actions themselves, and their "quasi-criminal" nature, appears to remain intact. We know of no other court which, prior to the Court of Special Appeals decision in the instant case, had challenged *Plymouth Sedan* based upon its reliance on *Boyd*.

S.Ct. at 1250, 14 L.Ed.2d 170. Additionally, "a forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law." *Id.* at 700, 85 S.Ct. at 1250, 14 L.Ed.2d 170. The Supreme Court summarized its holding, stating:

> [W]e conclude that the nature of a forfeiture proceeding, so well described ... in *Boyd,* and the reasons which led the Court to hold that the exclusionary rule ... is obligatory upon the States under the Fourteenth Amendment ... in *Mapp,* support the conclusion that the exclusionary rule is applicable to forfeiture proceedings such as the one involved here.

*Id.* at 702, 85 S.Ct. at 1251, 14 L.Ed.2d 170.

### III. Discussion

The Court of Special Appeals, in its opinion below, criticized *Plymouth Sedan* and its modern application, stating:

> Does [*Plymouth Sedan* ] stand for the broad principle that *Mapp* 's Exclusionary Rule must be applied to all drug-related forfeitures of automobiles regardless of whether those forfeiture proceedings are criminal or civil in character? A close reading of the opinion reveals that it most certainly does not.... Has *One 1958 Plymouth Sedan,* whatever it stood for, retained its vitality over the thirty-three years since it was handed down? No, it has not.

*One 1995 Corvette,* 119 Md.App. at 695–96, 706 A.2d at 45. That court also attempted to distinguish *Plymouth Sedan* from the case at hand, noting that in *Plymouth Sedan* the criminal penalties were less detrimental to Mr. McGonigle than the potential loss of his car in the forfeiture proceedings, while in this case petitioner faced severe criminal penalties that eclipsed the potential loss of his Corvette. Respondent makes similar arguments before this Court.

### A. The Continued Viability of *Plymouth Sedan*

Contrary to the Court of Special Appeals's opinion, *Plymouth Sedan* remains applicable. As recently as 1994, the

Supreme Court cited the case as authority for the proposition that the exclusionary rule applies to civil forfeiture proceedings. *United States v. James Daniel Good Real Property,* 510 U.S. 43, 49, 114 S.Ct. 492, 499, 126 L.Ed.2d 490 (1993) ("The Fourth Amendment does place restrictions on seizures conducted for purposes of civil forfeiture, *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 696, 85 S.Ct. 1246, 1248, 14 L.Ed.2d 170 (1965) (holding that the exclusionary rule applies to civil forfeiture), but it does not follow that the Fourth Amendment is the sole constitutional provision in question when the Government seizes property subject to forfeiture."). Although the Court of Special Appeals opined that *United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), impliedly overruled *Plymouth Sedan,* that argument is inaccurate for two reasons: (1) *Ursery* dealt exclusively with the Fifth Amendment Due Process Clause, see *infra,* and (2) *Ursery* never discussed or cited *Plymouth Sedan* in the majority opinion.[4]

Similarly, respondent relies on the Court of Special Appeals's quotation of *United States v. Janis,* 428 U.S. 433, 447, 96 S.Ct. 3021, 3029, 49 L.Ed.2d 1046 (1976), to argue *Plymouth Sedan* does not control this case. The quotation from *Janis* states that "[i]n the complex and turbulent history of the [exclusionary] rule, the Court never has applied it to exclude evidence from a civil proceeding, federal or state." That particular sentence, however, is followed by footnote seventeen of that opinion, which states: "[T]he Court has applied the exclusionary rule in a proceeding for forfeiture of an article used in violation of the criminal law." *Id.* at 447 n. 17, 96 S.Ct. at 3029 n. 17, 49 L.Ed.2d 1046 (citing *Plymouth Sedan,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170).

---

4. "It would have been quite remarkable for this Court both to have held unconstitutional a well-established practice, and to have overruled a long line of precedent, without having even suggested that it was doing so." *Ursery,* 518 U.S. at 288, 116 S.Ct. at 2147, 135 L.Ed.2d 549. These words are persuasive as to whether the Court was attempting to overrule *Plymouth Sedan* even though the phrase was used in a different context in *Ursery.*

Eleven of the thirteen United States Courts of Appeals have interpreted *Plymouth Sedan* to stand for the proposition that the exclusionary rule applies to civil *in rem* forfeitures.[5] Additionally, courts in thirty-four states have interpreted *Plymouth Sedan* to stand for the same proposition.[6] We note

**5.** *See United States v. 500 Delaware Street,* 113 F.3d 310, 312 n. 3 (2d Cir.1997); *United States v. One Lot of U.S. Currency,* 103 F.3d 1048, 1052 n. 3 (1st Cir.1997); *United States v. 9844 South Titan Court,* 75 F.3d 1470, 1492 (10th Cir.1996); *Becker v. IRS,* 34 F.3d 398, 407 n. 25 (7th Cir.1994); *United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1063 (9th Cir.1994); *United States v. Taylor,* 13 F.3d 786, 788 (4th Cir.1994); *Wolf v. Commissioner,* 13 F.3d 189, 194 (6th Cir.1993); *United States v. Elgersma,* 929 F.2d 1538, 1548, *vacated and reh'g granted,* 938 F.2d 179 (1991), *aff'd on other grounds,* 971 F.2d 690 (11th Cir.1992); *United States v. $639,558 in U.S. Currency,* 955 F.2d 712, 715 (D.C.Cir.1992); *United States v. South Half of Lot 7 and Lot 8,* 876 F.2d 1362, 1369, *vacated and reh'g granted,* 883 F.2d 53 (1989), *rev'd on other grounds,* 910 F.2d 488 (8th Cir.1990), *cert. denied,* 499 U.S. 936, 111 S.Ct. 1389, 113 L.Ed.2d 445 (1991); *United States v. One 1978 Mercedes Benz,* 711 F.2d 1297, 1303 (5th Cir.1983). Although the Third Circuit has never addressed *Plymouth Sedan,* two of the United States District Courts within that circuit have recognized that the case extends the exclusionary rule to civil forfeiture proceedings. *United States v. 92 Buena Vista Ave.,* 738 F.Supp. 854, 861 n. 6 (D.N.J.1990), *aff'd in part, remanded in part on other grounds,* 937 F.2d 98 (3d Cir.1991), *aff'd,* 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993); *United States v.1988 BMW 750IL,* 716 F.Supp. 171, 174 (E.D.Pa.1989). *See also* William Patrick Nelson, *Should the Ranch Go Free Because the Constable Blundered? Gaining Compliance with Search and Seizure Standards in the Age of Asset Forfeiture,* 80 CAL L. REV. 1309, 1339 (1992) (noting federal courts have uniformly applied the exclusionary rule to federal drug-related forfeitures under *Plymouth Sedan* ).

**6.** *See Berryhill v. State,* 372 So.2d 355, 356 (Ala.Civ.App.1979); *Wohlstrom v. Buchanan,* 180 Ariz. 389, 392, 884 P.2d 687, 690 (Ariz.1994); *Kaiser v. State,* 296 Ark. 125, 127, 752 S.W.2d 271, 272 (1988); *In re Conservatorship of Susan T.,* 8 Cal.4th 1005, 1014, 36 Cal.Rptr.2d 40, 884 P.2d 988, 993 (1994); *People v. Lot 23,* 707 P.2d 1001, 1003 (Colo.Ct.App.1985), *aff'd in part, rev'd in part on other grounds,* 735 P.2d 184 (Colo.1987); *In re One 1987 Toyota,* 621 A.2d 796, 799 (Del.Super.Ct.1992); *District of Columbia v. Ray,* 305 A.2d 531, 533 (D.C. 1973); *State Dept. of Highway Safety & Motor Vehicles v. Killen,* 667 So.2d 433, 436 (Fla.Dist.Ct.App.1996); *Pitts v. State,* 207 Ga.App. 606, 607, 428 S.E.2d 650, 651 (1993); *Idaho Dept. of Law Enforcement v. $34,000 U.S. Currency,* 121 Idaho 211, 214, 824 P.2d 142, 145 (Idaho App.1991); *People v. Seeburg Slot Machines,* 267 Ill.App.3d 119, 128, 204 Ill.Dec. 567, 641 N.E.2d 997, 1003 (1994); *Caudill v. State,* 613

that in many of these federal and state cases, the various courts refer to *Plymouth Sedan* primarily in dicta. Nevertheless, the cases consistently accept the interpretation of *Plymouth Sedan* as applying the exclusionary rule to civil *in rem* forfeiture proceedings. Our examination of the cases has revealed no court that completely rejects that interpretation, as the Court of Special Appeals did in the case below.[7]

---

N.E.2d 433, 439 (Ind.Ct.App.1993); *In re Flowers,* 474 N.W.2d 546, 548 (Iowa 1991); *State v. Davis,* 375 So.2d 69, 73 (La.1979); *Powell v. Secretary of State,* 614 A.2d 1303, 1306 (Me.1992); *Boston Housing Auth. v. Guirola,* 410 Mass. 820, 825, 575 N.E.2d 1100, 1104 (1991); *In re Forfeiture of $176,598,* 443 Mich. 261, 265, 505 N.W.2d 201, 203 (1993); *State v. Carrier,* 765 S.W.2d 671, 672 (Mo.Ct.App.1989); *State v. One 1987 Toyota Pickup,* 233 Neb. 670, 677, 447 N.W.2d 243, 248 (1989); *1983 Volkswagen v. County of Washoe,* 101 Nev. 222, 224, 699 P.2d 108, 109 (1985) (per curiam); *In re $207,523.46 in U.S. Currency,* 130 N.H. 202, 204–05, 536 A.2d 1270, 1272 (1987) (Souter, J.); *State v. Seven Thousand Dollars,* 136 N.J. 223, 239, 642 A.2d 967, 974–75 (1994); *In re One 1967 Peterbilt Tractor,* 84 N.M. 652, 654, 506 P.2d 1199, 1201 (N.M.1973); *Finn's Liquor Shop, Inc. v. State Liquor Auth.,* 24 N.Y.2d 647, 649–50, 301 N.Y.S.2d 584, 249 N.E.2d 440, 442, *cert. denied,* 396 U.S. 840, 90 S.Ct. 103, 24 L.Ed.2d 91 (1969); *State v. One 1990 Chevrolet Pickup,* 523 N.W.2d 389, 394 (N.D.1994); *Loyal Order of Moose Lodge 1044 v. Ohio Liquor Control Comm'n,* 105 Ohio App.3d 306, 309, 663 N.E.2d 1306, 1308, *appeal dismissed,* 74 Ohio St.3d 1456, 656 N.E.2d 951 (1995); *State ex rel. State Forester v. Umpqua River Navigation Co.,* 258 Or. 10, 15–16, 478 P.2d 631, 634 (1970); *In re Investigating Grand Jury,* 496 Pa. 452, 461, 437 A.2d 1128, 1132 (1981); *State v. Western Capital Corp.,* 290 N.W.2d 467, 472 & n. 6 (S.D.1980); *Board of License Comm'rs v. Pastore,* 463 A.2d 161, 162–63 (R.I.1983), *cert. dismissed as moot,* 469 U.S. 238, 105 S.Ct. 685, 83 L.Ed.2d 618 (1985); *Pine v. State,* 921 S.W.2d 866, 874 (Tex.App.1996); *Sims v. Collection Div.,* 841 P.2d 6, 13 (Utah 1992); *Commonwealth v. E.A. Clore Sons, Inc.,* 222 Va. 543, 548 n. 4, 281 S.E.2d 901, 904 n. 4 (1981); *Deeter v. Smith,* 106 Wash.2d 376, 378–79, 721 P.2d 519, 520 (1986).

7.  Only two cases appear to question whether *Plymouth Sedan* continues to extend the exclusionary rule to civil forfeitures. Both of these cases, however, addressed issues outside the scope of the Fourth Amendment. In *State v. One 1990 Chevrolet Corvette,* 695 A.2d 502, 506 (R.I.1997), the Rhode Island Supreme Court held that the Double Jeopardy Clause does not apply to civil *in rem* forfeitures, following *United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). That court noted it earlier had applied the exclusionary rule to a civil liquor license revocation hearing based on *Plymouth Sedan.* Like respondent in this case, the court pondered whether *Ursery* had effectively overruled *Plymouth Sedan.* The court did not answer, but distinguished *Plymouth Sedan* from *Ursery* and the case before it because *Plymouth Sedan* involved the Fourth Amendment, while *Ursery* involved Fifth

This Court's interpretation of *Plymouth Sedan* has not differed from the conclusions reached by the majority of other courts, even those which distinguish *Plymouth Sedan.* In *Sheetz v. Mayor of Baltimore,* 315 Md. 208, 212, 553 A.2d 1281, 1283 (1989), we stated:

> As a general matter, the federal exclusionary rule applies to criminal proceedings. However the Supreme Court has extended the rule to at least one civil proceeding in *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). There the Court held that illegally obtained contraband evidence could not be admitted in an automobile forfeiture case. Noting that the cost of forfeiture was quasi-punitive in nature and exceeded the cost of the criminal fines, the Court reasoned that "[i]t would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the forfeiture proceeding, requiring the determination that the criminal law has been violated, the same evidence would be admissible." *One Plymouth Sedan,* 380 U.S. at 701, 85 S.Ct. at 1251, 14 L.Ed.2d at 175. However since then, the Court has declined to extend the rule to *other* civil proceedings. *See United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (declining to apply the rule to federal tax proceedings where criminal evidence had been obtained by state police); *Immigration and Naturalization Serv. v. Lopez–Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 82

---

Amendment double jeopardy issues. *One 1990 Chevrolet Corvette,* 695 A.2d at 507.

In *United States v. One 1988 Ford Mustang,* 728 F.Supp. 495 (N.D.Ill. 1989), the United States District Court for the Northern District of Illinois held that the "proportionality" test used to enforce the Eighth Amendment Excessive Fines Clause does not apply to civil forfeiture cases. In reaching that holding, the court questioned whether *Plymouth Sedan* was still good law. The holding of *One 1988 Ford Mustang* has been impliedly overruled, however, by *United States v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), and *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).

L.Ed.2d 778 (1984) (refusing to apply the rule in the context of civil deportation proceedings). [Emphasis added.]

*Cf. Whitaker v. Prince George's County,* 307 Md. 368, 382, 514 A.2d 4, 11 (1986) ("Though [*Janis* ] cannot be said to stand for the proposition that evidence may *never* be excluded in a civil proceeding, it nonetheless severely undermined those cases in lower courts which applied the exclusionary rule to civil proceedings.") Neither *Sheetz, Janis* nor *Whitaker* dealt directly with forfeiture proceedings. *Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046, declined to extend the exclusionary rule to a civil tax proceeding against an illegal bookmaker. *Sheetz,* 315 Md. at 215–16, 553 A.2d at 1284–85, held that the exclusionary rule was inapplicable to administrative discharge proceedings unless improper motivation by the investigators could be shown. Finally, *Whitaker,* 307 Md. at 380, 514 A.2d at 11, distinguished *Plymouth Sedan* in holding the exclusionary rule would not apply to the admissibility of items seized pursuant to a search warrant, even a defective warrant, in a public nuisance action in civil court.

Although we recognize, as did the Court of Special Appeals, that the reach of the exclusionary rule has been limited since *Mapp* and *Plymouth Sedan, see One 1995 Corvette,* 119 Md. App. at 699–720, 706 A.2d at 49–58, we do not believe it to be appropriate, given the long and extensive history of reliance on *Plymouth Sedan* by the federal and state court systems, for this Court to attempt to overrule *Plymouth Sedan.* That is for the Supreme Court to do if it so chooses. It is our duty to continue to apply *Plymouth Sedan. See In re Flowers,* 474 N.W.2d 546, 548 (Iowa 1991) ("We are unwilling to anticipate the demise of *Plymouth Sedan* ... in the absence of a clear indication from the Supreme Court that it is no longer to be followed.").

## B. *Plymouth Sedan* Applies to the Case *Sub Judice*

We also address whether, as respondent argues, a civil *in rem* forfeiture proceeding under section 297 is distinguishable from the forfeiture proceeding in *Plymouth Sedan.* This argument, even if applicable, would depend on whether a civil

*in rem* forfeiture action under section 297 is "quasi-criminal," thus requiring Fourth Amendment protections to be enforced through the exclusionary rule by reason of language within *Boyd, Plymouth Sedan,* and their progeny. We conclude that section 297 is "quasi-criminal."

### 1. The Intended Purpose of the Fourth Amendment

Both parties in this appeal argue that the exclusionary rule should or should not be applied to section 297 depending on whether the Legislature intended the law to be "punitive." Respondent, arguing the law is not intended to be punitive, relies on *Ursery,* 518 U.S. at 292, 116 S.Ct. at 2149, 135 L.Ed.2d 549, which held that civil *in rem* forfeitures, particularly under 21 U.S.C. § 881, the federal equivalent to section 297, are not "punitive" for purposes of the Double Jeopardy Clause. In opposition, petitioner relies on *Aravanis v. Somerset County,* 339 Md. 644, 664 A.2d 888 (1995), *cert. denied,* 516 U.S. 1115, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996), which held that "[section] 297 ... is, like [21 U.S.C.] §§ 881(a)(4) and (a)(7), a punitive statute, the purpose of which is to require 'direct payment to a sovereign as punishment for some offense,' " under the Excessive Fines Clause contained in Article 25 of the Maryland Declaration of Rights. *Id.* at 655, 664 A.2d at 893 (quoting *Browning–Ferris Indus. v. Kelco Disposal, Inc.,* 492 U.S. 257, 265, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219 (1989)). *Aravanis* was premised largely on *Austin v. United States,* 509 U.S. 602, 622, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993), which held that the Eighth Amendment Excessive Fines Clause applies to a federal civil forfeiture action under 21 U.S.C. § 881 because of the statute's punitive nature. *See also Bajakajian v. United States,* 524 U.S. 321, ––––, 118 S.Ct. 2028, 2033, 141 L.Ed.2d 314 (1998) ("Forfeitures—payments in kind—are thus 'fines' if they constitute punishment for an offense.").

The determination of whether the prophylactic, judicially-created exclusionary rule applies to a civil *in rem* forfeiture action is not based on whether the forfeiture statute was intended to be "punitive." Rather, because the federal exclu-

sionary rule remedies certain violations of the Fourth Amendment, but is not coextensive with it, we must determine whether the Fourth Amendment was intended to apply to proceedings outside the scope of a criminal trial. Although the purpose of the exclusionary rule may be to curb improper police conduct, the purpose of the Fourth Amendment is to insure "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." It protects everybody, not just those of the criminal milieu, and, thus, is not limited to criminal proceedings. This issue was discussed by the Supreme Court in *Austin,* 509 U.S. at 608 n. 4, 113 S.Ct. at 2804–05 n. 4, 125 L.Ed.2d 488:

As a general matter, this Court's decisions applying constitutional protections to civil forfeiture proceedings have adhered to th[e] distinction between [constitutional] provisions that are limited to criminal proceedings *and provisions that are not.* Thus, the Court has held that the Fourth Amendment's protection against unreasonable searches and seizures applies in forfeiture proceedings, [citing *Plymouth Sedan* and *Boyd* ], but that the Sixth Amendment's Confrontation Clause does not, see *United States v. Zucker,* 161 U.S. 475, 480–482, 16 S.Ct. 641, 643, 40 L.Ed. 777 (1896). It has also held that the due process requirement that guilt in a criminal proceeding be proved beyond a reasonable doubt, see *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), does not apply to civil forfeiture proceedings. See *Lilienthal's Tobacco v. United States,* 97 U.S. 237, 271–272, 24 L.Ed. 901 (1878).

The Double Jeopardy Clause has been held not to apply in civil forfeiture proceedings, but only in cases where the forfeiture could properly be characterized as remedial. See *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 364, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361 (1984); *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 237, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972); see generally *United States v. Halper,* 490 U.S. 435, 446–449, 109 S.Ct. 1892, 1900–1902, 104 L.Ed.2d 487 (1989) (Double Jeopardy

Clause prohibits second sanction that may not fairly be characterized as remedial). Conversely, the Fifth Amendment's Self–Incrimination Clause, which is textually limited to "criminal case[s]," has been applied in civil forfeiture proceedings, but only where the forfeiture statute had made the culpability of the owner relevant, see *United States v. United States Coin & Currency*, 401 U.S. 715, 721–722, 91 S.Ct. 1041, 1045, 28 L.Ed.2d 434 (1971), or where the owner faced the possibility of subsequent criminal proceedings, see *Boyd*, 116 U.S., at 634, 6 S.Ct., at 534; see also *United States v. Ward*, 448 U.S. 242, 253–254, 100 S.Ct. 2636, 2644, 65 L.Ed.2d 742 (1980) (discussing *Boyd* ).

And, of course, even those protections associated with criminal cases may apply to a civil forfeiture proceeding if it is so punitive that the proceeding must reasonably be considered criminal. See *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Ward, supra.* [Emphasis added.]

■ The Supreme Court as late as 1993 in *Austin* noted that the Fourth Amendment's provisions were not limited to criminal proceedings, but, that the Confrontation Clause, the due process "reasonable doubt" standard, double jeopardy, and self-incrimination provisions were so limited. It clearly distinguished the applicability of these various provisions, squarely refusing to limit the Fourth Amendment's provisions to criminal cases, relying on *Plymouth Sedan* and *Boyd* in the process. The Court thus clearly implied in *Austin* that although the exclusionary rule is a judicially-created remedy intended to apply primarily to criminal and "quasi-criminal" proceedings, the Fourth Amendment applies to *all* "unreasonable searches and seizures" by the government, regardless of context. *See United States v. James Daniel Good Real Property*, 510 U.S. 43, 51, 114 S.Ct. 492, 500, 126 L.Ed.2d 490 (1993) ("It is true, of course, that the Fourth Amendment applies to searches and seizures in the civil context and may serve to resolve the legality of these governmental actions without reference to other constitutional provisions.").

Some administrative proceedings, although civil in nature, also can involve evidence that an administrative agency has searched for and seized while inspecting private property. Several Maryland statutes grant administrative agencies the right to seek search warrants to inspect private property. *See* Md.Code (1992, 1998 Repl.Vol.), § 3–205 of the Business Regulation Article (amusement attractions); Md.Code (1982, 1996 Repl.Vol.), § 7–256.1 of the Environment Article (controlled hazardous substances); Md.Code (1991, 1998 Cum.Supp.), § 5.5–113 of the Labor & Employment Article (railroad safety and health conditions); § 6–105 of the Labor & Employment Article (high voltage power lines); Md.Code (1957, 1996 Repl. Vol.), Art. 27, § 294 (controlled dangerous substances); Md. Code (1957, 1997 Repl.Vol., ), Art. 38A, § 8A (State Fire Marshal); Md.Code (1957, 1998 Repl.Vol.), Art. 89, § 2A (miscellaneous health and safety inspections by the Division of Labor and Industry). This Court, relying on *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), held that search warrants sought pursuant to then Art. 89, section 2A were constitutionally valid only when based on "probable cause." *Fred W. Allnutt, Inc. v. Commissioner of Labor & Industry*, 289 Md. 35, 50–51, 421 A.2d 1360, 1368 (1980).[8] That holding presumably applies to all statutorily authorized administrative search warrants. Although we realize that "probable cause" has somewhat different meanings in criminal and administrative contexts, *see id.* at 48–49, 421 A.2d at 1366–67, that Fourth Amendment protections apply to some administrative search warrants nonetheless demonstrates that the Fourth Amendment extends beyond traditional criminal cases.

The Fourth Amendment is not limited by its language or its history to the context of criminal trials. Its goal is to insure freedom from unreasonable governmental searches and sei-

---

**8.** *Barlow's* has since been limited by *Donovan v. Dewey*, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981), which held that warrantless administrative searches are constitutionally permissible when alternative protections, namely regularity, are in place and specific enforcement needs exist. *Allnutt* remains good law.

zures of any nature. By contrast, the goal of the Double Jeopardy Clause is to prevent multiple punishments and prosecutions (textually and historically criminal punishments and prosecutions), *Ursery*, 518 U.S. at 273, 116 S.Ct. at 2139–40, 135 L.Ed.2d 549, and the goal of the Eighth Amendment Excessive Fines Clause is to prevent excessive punishments in the form of payments extracted by the government. *See generally Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314; *Austin*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488. After *Austin*, therefore, a determination of whether a forfeiture statute is "punitive" in nature is only necessary when a double jeopardy or Eighth Amendment violation is alleged or when some other "protections associated with criminal cases" other than Fourth Amendment protections, are involved. *Austin*, 509 U.S. at 608 n. 4, 113 S.Ct. at 2804–05 n. 4, 125 L.Ed.2d 488 (citing *Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742; *Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644). Fourth Amendment protections, therefore, apply regardless of the criminality of the conduct of the owner of the property or the use to which the property is put.

As for other constitutional protections, a reviewing court should concern itself with whether the particular protection was intended to apply to the particular case before it. Often, this decision will be based on whether the particular constitutional protection was intended to be limited to criminal or civil matters. Thus, as noted in *Austin*, 509 U.S. at 608 n. 4, 113 S.Ct. at 2804 n. 4, 125 L.Ed.2d 488, the Sixth Amendment Confrontation Clause, the "beyond a reasonable doubt" standard, and the Fifth Amendment protection against self-incrimination, generally limited to criminal causes, do not apply to civil forfeitures. As noted, the Fourth Amendment lacks any such textual limitations. The Fourth Amendment applies, regardless of context, in cases in which the government allegedly has committed an "unreasonable" search or seizure or both.

### 2. *Plymouth Sedan*'s Definition of "Quasi–Criminal" Applies to Section 297

Respondent argues, as the Court of Special Appeals opined below, that because *Plymouth Sedan* involved a case in which the penalty under the civil forfeiture action could exceed the criminal penalties, the term "quasi-criminal" is limited to those circumstances, making the current case distinguishable. In support of this argument, respondent notes that in the case before us, petitioner stands to lose his Corvette, yet in criminal court he would have faced up to twenty years of imprisonment, $25,000 in fines, and a mandatory minimum of five years imprisonment without parole. By contrast, in *Plymouth Sedan*, the punishment for the liquor offense was a $100 to $500 fine, but Mr. McGonigle's car was worth $1,000.[9] Noting this, the Supreme Court stated in *Plymouth Sedan*, 380 U.S. at 700–01, 85 S.Ct. at 1251, 14 L.Ed.2d 170, that "the forfeiture is clearly a penalty for the criminal offense and can result in even greater punishment than the criminal prosecution." The Court reasoned that "[i]t would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the forfeiture proceeding, requiring the determination that the criminal

---

**9.** It is certainly possible that Mr. McGonigle's automobile could have been worth *less* than the criminal penalty. Given the wide range of available penalties in any given criminal statute compared to the wide range in values of property sought to be forfeited, it would prove difficult to say that a particular forfeiture law *always* exceeds or does not exceed the related criminal penalties. Under respondent's argument, the application of the exclusionary rule would bear little relation to the nature of the forfeiture statute, or of the forfeiture itself, but only to the value of the item seized. An identical search of two vehicles, one a Rolls Royce and the other, a twenty-year-old economy car, could cause differing applications of the exclusionary rule. Because of the value of the Rolls Royce, the statute might be punitive while, because of the low value of the other vehicle, it might not be. In other words, the evidence might be excluded in one instance and admitted in the other. This argument would lead to the absurd situation where the exclusionary rule would or would not be applicable depending upon the value of the item seized. We note that in *Boyd*, the civil forfeiture penalty did *not* exceed the criminal penalty, which *included* forfeiture, as well as two years imprisonment and a $50 to $5,000 fine. *Boyd*, 116 U.S. at 617, 6 S.Ct. at 525, 29 L.Ed. 746.

law has been violated, the same evidence would be admissible." *Id.* at 701, 85 S.Ct. at 1251, 14 L.Ed.2d 170.

Respondent also alleges that when *Plymouth Sedan* referred to a forfeiture action "such as the one involved here," the Court meant to limit its holding to forfeiture statutes similar to Pennsylvania's, which authorized a civil forfeiture action only after a criminal conviction. Respondent points out that under the Maryland forfeiture statute, criminal charges are irrelevant as to whether a forfeiture complaint may be filed under section 297 against the suspect property. Despite respondent's arguments, the conduct that gives rise to the forfeiture action under section 297 must, nevertheless, be criminal in nature. Under the statute, if there is no criminal conduct or criminal intent relating to the use of the object for which forfeiture is sought, no foundation for forfeiture exists. Subsection (b)(4) of section 297 provides that vehicles "used or intended for use, to transport ... property described" in certain other paragraphs are subject to forfeiture. The property described in those paragraphs, subsections 297(b)(1) & (2), are controlled dangerous substances utilized "in violation of the provisions of this subheading." The laws contained within the subheading, "Health–Controlled Dangerous Substances," establish the criminality of the conduct at issue here—the illegal manufacture, distribution, or possession of controlled dangerous substances, including possession in sufficient quantities to indicate an intent to distribute. Although criminal charges may not be necessary, criminal conduct or criminal intent is.

A more supportable interpretation of *Plymouth Sedan* is that it speaks in general terms, labeling as "quasi-criminal" any forfeiture action based upon inherently criminal activity, whether actually indictable or not, and no matter what the punishment. For instance, the Court noted that "as Mr. Justice Bradley aptly pointed out in *Boyd,* a forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law." *Plymouth Sedan,* 380 U.S. at 700, 85 S.Ct. at 1250, 14 L.Ed.2d 170. Moreover, immediately

after noting the disparity in the forfeiture and criminal penalties in the case before it, the *Plymouth Sedan* Court noted in a footnote that *Boyd* "rejected *any* argument that the technical character of a forfeiture as an *in rem* proceeding against the goods had any effect on the right of the owner of the goods to assert as a defense violations of his constitutional rights." *Id.* at 702 n. 11, 85 S.Ct. at 1251 n. 11, 14 L.Ed.2d 170 (emphasis added). Considering the use of this broad language, the Court was referring impliedly not just to forfeitures based upon the specific statutes in *Boyd* or *Plymouth Sedan*, but to all forfeiture actions requiring evidence of a criminal nature, *i.e.,* evidence of criminality. It is this general application of the exclusionary rule to most civil *in rem* forfeiture proceedings based upon criminal conduct, *i.e.,* "quasi-criminal" proceedings, that the eleven federal circuits and thirty-four sister states have accepted and applied. *See supra.*

We also note that the Supreme Court took great pains to distinguish its holding in *Plymouth Sedan* from *United States v. Jeffers*, 342 U.S. 48, 54, 72 S.Ct. 93, 96, 96 L.Ed. 59 (1951) and *Trupiano v. United States*, 334 U.S. 699, 710, 68 S.Ct. 1229, 1224–35, 92 L.Ed. 1663 (1948). In those cases, the Court stated in dicta that contraband *per se,* illegally seized and subsequently suppressed under the exclusionary rule, need not be returned to the criminal defendant because the contraband itself is illegal to possess. *See Plymouth Sedan*, 380 U.S. at 698–99, 85 S.Ct. at 1249–50, 14 L.Ed.2d 170. By contrast, in *Plymouth Sedan*, the Court noted that possession of an automobile is not "even remotely criminal." *Id.* at 699, 85 S.Ct. at 1250, 14 L.Ed.2d 170. Rather, the Court stated, "[i]t is only the alleged use to which this particular automobile was put that subjects Mr. McGonigle to its possible loss." *Id.* The Court went on to explain that like in *Boyd*, the property involved in the forfeiture proceeding was "not intrinsically illegal in character." *Id.* at 700, 85 S.Ct. at 1250, 14 L.Ed.2d 170.

Just as there was "nothing even remotely criminal in possessing" a 1958 Plymouth, it was not criminal for petitioner to

own a 1995 Corvette. To prove, therefore, that the derivative contraband in this case, the Corvette, should be forfeited under section 297, respondent must provide evidence of a drug crime or the intention to commit one by petitioner related to the use of the vehicle, just as the Commonwealth in *Plymouth Sedan* had to prove evidence of contraband *per se*, the unsealed liquor, to seize Mr. McGonigle's car. A section 297 forfeiture action is, therefore, "quasi-criminal" litigation because criminality is at the basic foundation of the conduct from which a forfeiture suit may arise under the Maryland statute.[10]

Finally, we reject respondent's argument that section 297, unlike the statute in *Plymouth Sedan*, does not require the actual commission of a crime to trigger a forfeiture action. Respondent cites *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984), and *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972), for this proposition that *Plymouth Sedan* covered only forfeiture actions triggered by a criminal conviction. Both of these cases, however, addressed the Double Jeopardy Clause, which the Supreme Court has repeatedly held does not apply to civil forfeiture proceedings the Legislature does not intend to be "punitive." *See generally Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549. That a civil forfeiture statute requires a crimi-

---

**10.** We recognize that in *Chase v. State*, 309 Md. 224, 248, 522 A.2d 1348, 1360 (1987), we cited a major treatise which "pointed out that the courts which hold that the exclusionary rule applies in forfeiture proceedings rely on *Plymouth's* reasoning that the rule applies to proceedings which are 'quasi-criminal' in that their object is to *penalize* for the commission of an offense against the law and could result in even greater *punishment* than the criminal prosecution." (Emphasis added.) Again, the primary focus in forfeiture cases involving the Fourth Amendment is not on "punitiveness" and "punishment," but the Fourth Amendment's purpose of prohibiting "unreasonable searches and seizures." *See Austin*, 509 U.S. at 608 n. 4, 113 S.Ct. at 2804, 125 L.Ed.2d 488. The forfeiture statute in *Plymouth Sedan* had a penalty that, *in that case*, exceeded the possible criminal penalties, and also contained a condition precedent to the maintenance of the suit, *i.e.*, a criminal conviction. It was, therefore, "quasi-criminal" in nature, adding support to the Supreme Court's decision. But, the Court did not limit its holding to only that factual context.

nal conviction prior to filing is more relevant under the Double Jeopardy Clause, which, as we have noted, seeks to prevent multiple punishments for the same offense. Considering *Austin,* the "punitive" terminology is of much lesser relevance, if applicable at all, in Fourth Amendment cases.

Moreover, *Boyd,* upon which *Plymouth Sedan* relied heavily, concerned a revenue law that authorized forfeiture as a *criminal* penalty for failure to pay customs duties. Nevertheless, rather than initiating criminal proceedings, the government, in order to utilize a statute authorizing the issuance of a subpoena in non-criminal matters, filed a civil *in rem* action against the imported goods. The government's intention was obvious: the importer's papers were essential to prove the importer had not paid duties on the goods in question. The federal statute used by the government authorized it to issue a subpoena compelling production of such papers "[i]n all suits and proceedings *other than criminal,* arising under any of the revenue laws of the United States." *Boyd,* 116 U.S. at 619, 6 S.Ct. at 526, 29 L.Ed. 746 (emphasis added). The government based its subpoena on its "showing that said action is a suit or proceeding *other than criminal,* arising under the customs revenue laws of the United States, and *not for penalties." Id.* (emphasis added). That the forfeiture derived from "an act [authorizing subpoenas,] which expressly excludes criminal proceedings from its operation, (though embracing civil suits for penalties and forfeitures,) and ... an information not technically a criminal proceeding," *id.* at 633, 6 S.Ct. at 534, 29 L.Ed. 746, made little difference. The Court emphasized that because the government proceeded using a non-criminal action should not "relieve the proceedings or the law from being obnoxious to the prohibitions" of the Fourth Amendment. *Id.*

We, too, deal with a statute that does not create a criminal proceeding, even though criminal evidence or contraband *per se, i.e.,* the drugs, is typically necessary to prove a forfeiture case as to derivative contraband, *i.e.,* the car, under section 297. As *Boyd* points out, "[i]t is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." *Id.* at 635, 6 S.Ct. at

535, 29 L.Ed. 746. Like the *Boyd* Court, we decline to allow the government to avoid compliance with the requirements of the Fourth Amendment as traditionally applicable in criminal cases by proceeding under the auspices of a civil action that authorizes the taking of private property, but only if that property is used, or intended to be used, for criminally-related purposes. To do otherwise might facilitate a practice in which a car or other property, and the financial benefits resulting from forfeiture, might become the primary purpose of the actions rather than the apprehension and conviction of the criminals and their removal from society. *See* William Patrick Nelson, *Should the Ranch Go Free Because the Constable Blundered? Gaining Compliance with Search and Seizure Standards in the Age of Asset Forfeiture,* 80 CAL. L. REV. 1309, 1325–33 (arguing that pragmatic concerns, *i.e.,* increased budgetary revenue, the ability to use valuable assets in future undercover operations, and an appearance of stronger job performance, have encouraged greater use of forfeiture laws).

### 3. Balancing Benefits Versus Social Costs

■ Respondent also argues that even if we classify section 297 forfeiture actions as "quasi-criminal," we still should decline to apply the exclusionary rule because the Supreme Court recently noted that the rule applies only in situations "where its deterrence benefits outweigh its 'substantial social costs.'" *Pennsylvania Bd. of Probation v. Scott,* 524 U.S. 357, 118 S.Ct. 2014, 2019, 141 L.Ed.2d 344 (1998) (quoting *United States v. Leon,* 468 U.S. 897, 907, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1984)). Respondent contends that applying the rule to this case would provide minimal deterrence because the loss of the ability to use the evidence in petitioner's criminal prosecution alone would deter the police, especially given the severity of the criminal penalty versus the loss of his car. As we have indicated, this approach would result in the applicability of the exclusionary rule being dependent, at least in part, on the value of the vehicle seized. Such an approach, in our view, would not be feasible.

*Scott*, moreover, is distinguishable because that case dealt only with parole revocation hearings, a type of proceeding completely unrelated to any issue determinative to this case. *Scott*, 524 U.S. at —— – ——, ——, 118 S.Ct. at 2017–18, 2022, 141 L.Ed.2d 344. The Court noted that parole is essentially an agreement, *i.e.*, a contract, between the state and a prisoner, granting "a limited degree of freedom in return for the parolee's assurance that he will comply with the often strict terms and conditions of his release." *Id.* at ——, 118 S.Ct. at 2020, 141 L.Ed.2d 344. To allow an exclusionary rule in that context would hinder the state's ability to maintain close supervision over a parolee and, in turn, prove to the parole board that a parolee has violated his or her end of the "deal," *i.e.*, contract, thus exacting great societal costs which outweigh any deterrence effect. *See id.*

By contrast, in a civil drug-related forfeiture case, the need for deterrence exceeds the societal costs. Without the application of the exclusionary rule to section 297 forfeiture actions, officers could seize contraband, absent sufficient probable cause to do so, even if that same evidence would be inadmissible in a criminal context to prove the wrongdoer's criminality. We already have recognized that this consideration, "whether, at the time of the illegal search, the police were aware of the potential effect of using such evidence in civil proceedings" is one factor of several "in considering the motivation behind an improper search and seizure." *Sheetz*, 315 Md. at 216, 553 A.2d at 1285. The lack of the deterrent effect of the exclusionary rule under circumstances in which probable cause is lacking could lead to a separate line of police work devoted to forfeiture. We are keenly aware that governments increasingly have filed civil forfeiture actions in lieu of criminal charges, knowing that constitutional protections provide greater obstacles to their criminal cases, and that forfeitures have a great financial impact not only on the defendant but on the government's coffers as well. *See* Nelson, *supra*, at 1328 (noting one study in which eighty percent of property owners who lost their assets to forfeiture were never charged with a criminal offense). This practice has become more common-

place despite our repeated warning that in this state, "forfeitures are disfavored in law because they are considered harsh extractions, odious, and to be avoided when possible." *State ex rel. Frederick City Police Dept. v. One 1988 Toyota Pick-up Truck*, 334 Md. 359, 375, 639 A.2d 641, 649 (1994) (citing *United States Coin & Currency v. Director of Finance*, 279 Md. 185, 187, 367 A.2d 1243, 1244 (1977); *Commercial Credit Corp. v. State*, 258 Md. 192, 199, 265 A.2d 748, 752 (1970)). We believe that the benefits of the deterrent effect of the exclusionary rule outweigh the costs society may incur with its proper application to forfeitures under section 297.

## IV. Conclusion

The holding of *Plymouth Sedan* remains applicable to civil *in rem* forfeiture cases. Furthermore, *Plymouth Sedan* applies to civil *in rem* forfeiture actions under Art. 27, section 297. We shall therefore reverse the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

Concurring opinion by RAKER, J., in which CHASANOW, J., joins.

RAKER, Judge, concurring.

I believe Judge Moylan, writing below for the Court of Special Appeals, was correct in his analysis of this case. I concur in the judgment of the Court reversing the intermediate appellate court for the sole reason that neither this Court, nor the Court of Special Appeals, has the power to disregard or overrule the United States Supreme Court holding in *Plymouth Sedan*.

The Supreme Court of Iowa expressed a similar sentiment in *In re Flowers*, 474 N.W.2d 546, 548 (Iowa 1991) when it said:

We are not unaware that, since the time the *Plymouth Sedan* and *Janis* cases were decided, some reshaping has occurred in fourth amendment jurisprudence involving the exclusionary rule. We are unwilling to anticipate the demise of *Plymouth Sedan,* however, in the absence of a clear indication from the Supreme Court that it is no longer to be followed.

For those reasons, I concur in the judgment only.

Judge CHASANOW has authorized me to state that he joins in the views expressed herein.