69 A.3d 61

DEHN MOTOR SALES, LLC, t/a Insurance
Recovery Auto Liquidators, et al.

v.

Joseph A. SCHULTZ, Jr., et al.

No. 1276, Sept. Term, 2011.

Court of Special Appeals of Maryland.

June 26, 2013.

376

John B. Sinclair (Crosswhite, Limbrick, & Sinclair, Alexander R. Martick, on the brief), Baltimore, MD, for Appellant.

Kara K. Lynch (Neal M. Janey, Jr., Deputy Chief Legal Counsel, on the brief), Baltimore, MD, for Appellee.

Panel: KRAUSER, C.J., GRAEFF and WATTS, JJ.

KRAUSER, C.J.

As a result of numerous citizen complaints, officers of the Baltimore City Police Department seized and towed untagged and unregistered vehicles owned by Dehn Motor Sales, LLC, a used car business that was operated and owned, in part, by Farzan Mohamed. Some of the vehicles, parked on a nearby street and in an alleyway, were impeding if not blocking traffic; others, parked in a fenced lot and on the lawn of an adjacent property owned by Dehn Motor Sales, LLC, were leaking fluids, posing both a fire and chemical hazard. Mohamed, Dehn Motor Sales, LLC, and a related entity[1] (whom we shall hereafter collectively refer to as "Dehn Motor") then brought a replevin action in the District Court of Maryland for the return of the towed vehicles, which ended when the parties reached an agreement that the vehicles would be returned to Dehn Motor, subject to the condition that it not bring them back to the locations from which they had been towed.

Following the resolution of the District Court replevin action, which was almost three years after the date the cars were towed, Dehn Motor[2] filed suit in the Circuit Court for Baltimore City against, among others, the two officers who had ordered that the vehicles be towed, Officer Joseph A. Shultz, Jr., and Sergeant Anthony Proctor,[3] alleging violations of the Maryland Declaration of Rights and the United States Constitution, although no timely notice of claim had been provided pursuant to the Local Government Tort Claims Act ("LGTCA").[4] Officer Schultz and Sergeant Proctor thereafter

---

**1.** Progressive Car Rentals, LLC, joined in the District Court replevin action as a plaintiff.

**2.** Along with the original plaintiffs in the District Court, another related entity, The Brooklyn/Progressive Auto Paint Group, Inc., was also a plaintiff in the circuit court suit.

**3.** The other defendants were the Baltimore City Police Commissioner, Frederick Bealefeld; the Mayor and City Council of Baltimore City; and the Brooklyn and Curtis Bay Coalition, each of which was subsequently dismissed from the suit.

**4.** Md.Code (1974, 2013 Repl.Vol.), §§ 5–301 to 304 of the Courts and Judicial Proceedings Article. Although the LGTCA has been amended

moved for summary judgment on the grounds that Dehn Motor's claims were barred, first, by its failure to comply with the LGTCA, second, by its failure to state a claim upon which relief could be granted, and third, by the officers' qualified immunity. We shall affirm not only on each of those grounds, but on a ground rejected by the circuit court, as the officers, contrary to what that court held, were engaged in a community caretaking function when they had the vehicles in question removed.

## Background

Farzan Mohamed was the operator and part owner[5] of Dehn Motor Sales, LLC, a used car business, located on the corner of East Patapsco Avenue and Fourth Street in Baltimore City. The business encompassed three adjacent lots: a sales lot at 330 East Patapsco Avenue, a fenced vacant lot at 3554 Fourth Street, and a single family residence at 3550 Fourth Street. In 2003, the Baltimore City Police Department began receiving complaints from citizens about "untagged," "unregistered," and unattended vehicles parked on the street and in an alleyway that bordered Dehn Motor's business. Those cars were reported to be blocking and inhibiting traffic.

Responding to those complaints, Officer Joseph A. Schultz, Jr., "on numerous occasions," went to Dehn Motor's business. Each time, upon arrival, he instructed Mohamed or one of his employees to move the cars. Usually the cars were moved, but, when they were not, Officer Schultz issued parking tickets for each of the unmoved cars.

But the complaints continued unabated. In March of 2005, upon being instructed by his supervisor to "tak[e] care of the problem," Officer Schultz then went to the car lot and observed that the alley was blocked, that cars without tags were

since the instigation of the instant case, because those changes do not affect the substance for our purposes, we cite the current version.

**5.** The other owners are Dolores Dehn and Davitrie Mohamed, neither of whom are involved in this case.

parked on the street, and that cars were on the lawn of the house at 3550 Fourth Street.

As Mohamed was not there when he arrived, the officer informed an employee of the car lot about the complaints and told him to "get this cleaned up . . . by Monday." If it was not, the officer warned, he would bring "everybody" back with him, including the "Environmental Crimes Unit" ("ECU"), "transit and traffic," and "inspectors."

When Monday arrived, Officer Schultz, upon personally confirming that the vehicles had not been moved as directed, left and then returned to the location of Dehn Motor's business with Sergeant Anthony Proctor,[6] his supervisor, and personnel from the ECU, transit and traffic, and zoning, along with tow trucks. Upon arrival, the officers allowed Mohamed to move the vehicles blocking the alleyway that could be moved. The others were towed.

At that time, the officers also observed vehicles parked on the front and side lawns of the house on the lot at 3550 Fourth Street. Among other things, those vehicles were purportedly blocking access to that building.[7] As Officer Schultz described it, the cars were "jammed in there" and parked "all the way up to [the] other property line." In fact, the officers, said Schultz, "had to literally climb over these cars to get to" all of the vehicles.

Officer Shultz was then informed by an ECU officer that the cars surrounding the house posed a hazard, as "fluids" from the vehicles were "seeping right into the ground." Fearing that the cars were also creating a "horrific" fire hazard because of the gasoline in their tanks and because they blocked the fire department's access to the house, and recalling that only a "week or two before" there had been a fire in Dundalk "where four houses burned down, under the same

---

6. Sergeant Proctor was subsequently promoted to Lieutenant; however, for consistency's sake, we shall refer to him as Sergeant.

7. The record does not indicate whether the home was occupied or not.

means," Officer Schultz and Sergeant Proctor had the cars surrounding the house towed.

Officer Schultz further observed, within the fenced lot located at 3554 Fourth Street: "half cars," "cars with the motor sticking out," "cars sitting on top of other cars," "engine parts," "transmissions," and "motors" and was informed by "zoning" personnel that Dehn Motor only had a permit for "an auto dealership and light mechanical work, not for a body shop and heavy mechanical work" and certainly not for a "junkyard."

Upon closer examination of the fenced lot, the officers found that the cars were "leaking fluids," which were "leaching into the ground." Officer Shultz could "see the fluids leaking out of the motors ... [and] antifreeze coming out of the radiators." When ECU detectives advised Sergeant Proctor that the "cars present[ed] an immediate ... chemical and fire hazard to the community" and that their removal "would resolve the hazardous situation," he had the vehicles towed to "remove the hazard." The officers were also concerned, according to Officer Schultz, that the fluids that were "running into the soil in that area," were also "going down the storm drains" as well, expanding the threat of the hazard.

Before leaving this scene, police department personnel provided Dehn Motor with a list of the vehicles towed from the street, alleyway, lawn, and fenced lot. The list showed that a total of sixty-one vehicles had been towed.[8] Dehn Motor thereafter requested and received an administrative hearing as to each of three cars that had been towed, to contest the removal by police of that particular vehicle.[9] As a result of those hearings, it was determined that two of the vehicles should be returned to Dehn Motor and that it would not have to pay any towing or storage fees as to those vehicles, but that

---

8. Dehn Motor alleges that an additional six vehicles, not on the list, were also towed.

9. There is no explanation for why Dehn Motor did not request administrative hearings for the other vehicles towed that day.

it would have to pay such fees for the return of the third vehicle.

## District Court Proceedings

While those hearings were pending, on April 19, 2005, eighteen days after the cars had been towed, Dehn Motor filed an action for replevin in the District Court seeking the return of the vehicles. Named as defendants in that suit were the Director of the Baltimore City Department of Transportation, Alford Foxx; the "Acting Tow Manager" for the Baltimore City Department of Transportation, Richard Hooper; and the Mayor and City Council of Baltimore. The suit ended when the parties agreed that the vehicles would be returned to Dehn Motor, who would not have to pay the towing and storage fees, but in return, Dehn Motor agreed that it would not return the vehicles to the locations from which they had been towed. The District Court signed an order dated March 12, 2008, reflecting that agreement.

## Circuit Court Proceedings

After the District Court replevin action had concluded, Mohamed, Dehn Motor, LLC, and the businesses Mohamed operated at that site [10] filed a complaint, sixteen days later, in the Circuit Court for Baltimore City against, among others,[11] Officer Schultz and Sergeant Proctor—neither of whom had been named in the replevin action. The suit alleged, for the first time, violations of Articles 19, 24, and 26 of the Maryland Declaration of Rights and the Fourth and Fourteenth Amendments to the United States Constitution.

Ultimately, Dehn Motor and the officers filed cross-motions for summary judgment. The circuit court promptly mailed a

---

10. The other businesses operated by Mohamed at that location were Progressive Car Rentals, LLC and The Brooklyn/Progressive Auto Paint Group, Inc.

11. The remaining defendants were the Baltimore City Police Commissioner, Frederick Bealefeld; the Mayor and City Council of Baltimore City; and the Brooklyn and Curtis Bay Coalition. Those defendants were each dismissed from this suit.

notice to the parties informing them that a hearing on the motions would be held on February 4, 2011, and that any response to those motions must be filed by January 7, 2011,[12] but neither side filed a response by that date. On January 25, 2011, the circuit court sent to the parties a reminder of the date on which the hearing would be held.

On February 3, 2011, the day before the hearing was to be held on the parties' cross-motions for summary judgment and almost thirty days after the court's deadline for a response had passed, Dehn Motor filed a response to Officer Schultz and Sergeant Proctor's motion for summary judgment. The next day, the court began the hearing on the cross-motions by inquiring as to why Dehn Motor's response had been filed so late. When the court found the explanation offered by Dehn Motor's counsel unpersuasive, it struck the response.

The circuit court, after hearing argument, denied Dehn Motor's motion for summary judgment but granted the summary judgment motion of Officer Schultz and Sergeant Proctor. The court found that Dehn Motor had not complied with the notice requirement of the LGTCA, declaring that the replevin suit Dehn Motor filed in the District Court "was not notice to anyone . . . that there was a claim against these two officers, a claim for money damages" and thus that Dehn Motor had failed to comply with the LGTCA. In so holding, the court disposed of Dehn Motor's claims under the Maryland Declaration of Rights.[13]

It then turned to Dehn Motor's federal constitutional claims and held that it had failed to state a claim upon which relief could be granted. The seizure of the vehicles was lawful, the

---

12. Maryland Rule 2–311(b) provides that, except in circumstances not present in the instant case, responses to motions be filed within fifteen days after being served with the motion. Maryland Rule 1–203(c) adds three days to the time for response when service of the motion has been made via mail, as was the case here.

13. The officers did not assert, and the court did not hold, that the failure to give notice under the LGTCA barred Dehn Motor's claims under the Fourth and Fourteenth Amendments.

court opined, because the officers were acting pursuant to Article 19, § 50–2; [14]

Article 19, § 50–11; [15] Article 31, § 6–3; [16] Article 31, § 31–6; [17] and Article 31, § 31–8 [18] of the Baltimore City Code whose constitutionality had not been challenged, because the response that had addressed those provisions had been struck

---

14. Article 19, § 50–2 provides in part:
 (a) *Prohibited conduct.* Except as specifically provided in this section, no person may in any manner obstruct any street, lane, sidewalk, footway, or alley in the City or any of their gutters.

15. Article 19, § 50–11 provides:
 The Director of Public Works is hereby authorized and empowered to remove or cause to be removed all manner of obstructions to the passage through the streets, lanes, or alleys which he shall find remaining in the same an unnecessary length of time.

16. Article 31, § 6–3 provides:
 No vehicle shall be so parked or otherwise stopped as to prevent the free passage of other vehicles or street cars in both directions at the same time.

17. Article 31, § 31–6 provides:
 (a) *Prohibited conduct.*
 (1) It shall be unlawful for any person to use City streets to park, stop, store, or operate a vehicle or part thereof in such a manner as to obstruct or impede the free flow of traffic thereon or the movement of pedestrians.
 (2) Determination by the Commissioner that such a vehicle is actually obstructing traffic as aforesaid shall be considered prima facie evidence of a violation hereof.
 (b) *Removal of Vehicle.*
 (1) The Commissioner is authorized to cause such vehicle to be removed immediately so as to clear the streets.
 (2) Such removal may be:
 (i) to another part of the same street;
 (ii) to a side street; or
 (iii) effected in the manner hereinafter provided for impounded and abandoned motor vehicles.

18. Article 31, § 31–8 provides in part:
 (d)(2) The vehicle is deemed abandoned and may be towed or otherwise removed, as provided for vehicles found abandoned on public property, if:

 * * *

 (iii) the storage of the vehicle is in violation of the zoning laws or regulations of the City as applied to that property.

by the court for untimeliness. The court further held that, even if the provisions of the Baltimore City Code did not bestow upon the officers the legal authority to tow the vehicles, the officers nonetheless were protected by qualified immunity from any federal claims against them for that action.

Having found that the Baltimore City Code authorized the officers' actions, the court then addressed the officers' claim that the seizure of Dehn Motor's vehicles was lawful under the community caretaking function. The court disagreed, stating that it did not think that the officers were acting pursuant to their community caretaking role because that function involved activities by the police such as responding to car accidents or checking houses for possible burglaries, and not the kind of action taken by police in the case at bar. Following the subsequent denial of its motion to alter or amend, Dehn Motor noted this appeal.

## DISCUSSION

As this is an appeal from the grant of summary judgment in favor of the officers, we turn to Maryland Rule 2–501, the rule governing summary judgment. Subsection (f) of that rule provides that, upon a party's motion for summary judgment, a court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Because there was no dispute below as to any material fact, we proceed to the question of whether the officers were "entitled to judgment as a matter of law." To answer that question, we conduct a review de novo of the legal determinations made by the circuit court, which are the subject of this appeal. *Frazier v. Castle Ford, Ltd.,* 200 Md.App. 285, 294, 27 A.3d 583 (2011), *aff'd in part,* 430 Md. 144, 59 A.3d 1016 (2013).

## I.

Dehn Motor contends that the circuit court erred in granting summary judgment on the grounds that the replevin

action it filed in the District Court did not comply with the notice requirement of the LGTCA.[19] Dehn Motor insists that, in accordance with the LGTCA, its replevin action did provide sufficient notice to the City of the "time, place and cause of [Dehn Motor's] injury" and gave the City an adequate opportunity to investigate the incident and prepare for any other claim that might be brought.

As a consequence, we begin our discussion by addressing, first, the question of what does the notice provision demand, and, second, the question of whether Dehn Motor's replevin action satisfies that mandate. To begin with, we note that section 5–304(b) of the Courts and Judicial Proceedings Article [20] ("CJP") sets forth the LGTCA's notice requirements. That section requires a notice of the claim under the LGTCA be given within 180 days of the injury alleged. Specifically, it provides:

> *Notice Required.*—Except as provided in subsections (a) and (d) of this section, an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.

To whom the notice is to be given is set out in CJP § 5–304(c)(3)(i), which requires that, as for the City of Baltimore, notice is to be given to the City Solicitor. As for the form and content of the notice, CJP § 5–304(b)(2) states that "[t]he notice shall be in writing and shall state the time, place, and cause of the injury."

The notice provision of the LGTCA is a "condition precedent to maintaining an action directly against a local government or its employees," *Hansen v. City of Laurel*, 420 Md. 670, 682, 25 A.3d 122 (2011), but, strict compliance with that provision is not required. A notice, may, if it substantial-

---

**19.** Dehn Motor did not raise the issue of whether the notice requirement of the LGTCA applies to state constitutional claims.

**20.** Md.Code (1974, 2013 Repl.Vol.), § 5–304(b) of the Courts and Judicial Proceedings Article.

ly complies with the notice requirement, "satisfy the statute where the purpose of the notice requirement is fulfilled." *Moore v. Norouzi,* 371 Md. 154, 168, 807 A.2d 632 (2002). The purpose of the notice requirement, the Court of Appeals has said, is to apprise a municipality " 'of its possible liability at a time when it could conduct its own investigation, *i.e.,* while the evidence was still fresh and the recollection of the witnesses was undiminished by time, sufficient to ascertain the character and extent of the injury and its responsibility in connection with it.' " *Id.* at 167–68, 807 A.2d 632 (internal quotation marks omitted) (quoting *Williams v. Maynard,* 359 Md. 379, 389–90, 754 A.2d 379 (2000)). To fulfill that purpose, the notice must set forth the " 'facts and circumstances giving rise to the claim.' " *Faulk v. Ewing,* 371 Md. 284, 299, 808 A.2d 1262 (2002) (quoting *Condon v. Univ. of Maryland,* 332 Md. 481, 496, 632 A.2d 753 (1993)).

In the instant case, the District Court replevin action did not forewarn, as a notice of claim must, that an action for unliquidated damages may follow; in fact, it suggested the contrary: Dehn Motor's replevin claim was only against the City. More importantly, the only issue raised by the replevin action was the return of the vehicles, the towing fees that had been charged, and any damages for the temporary detention of the vehicles. There was no reason to suspect from the replevin action—which Dehn Motor claims was comparable to a notice of claim—that Sergeant Proctor and Officer Schultz were potential parties. Nor was there any reason to believe, from the nature of the action, that constitutional claims were waiting in the wings. The matter was thereafter settled by the return of the vehicles and the lifting of towing and storage fees, in exchange for the promise by Dehn Motor not to return the vehicles to the locations from which they had been towed.

The relief sought by Dehn Motor in the replevin suit was the return of its towed vehicles, without having to pay the towing and storage fees, as well as damages for the seizure and detention of the vehicles. No other injuries were alleged. Nor could they have been as a replevin action entails very

limited relief, namely, the return of the vehicles and damages caused by the detention of the vehicles. *Koch v. Mack Int'l Motor Truck Corp.*, 201 Md. 562, 572, 95 A.2d 105 (1953) (stating that "damages in replevin actions are for the detention of the chattel"). Moreover, the replevin complaint gave no warning, expressed or implied, that the officers might be future defendants in a more substantial and thus more threatening action in an altogether different court involving constitutional claims and that the City could also face additional and substantial damage claims, far greater than those that could be advanced in a replevin action. While the replevin suit requested limited damages, the circuit court action demanded $500,000 in compensatory damages and $1,000,000 in punitive damages.

In sum, the failure to provide a separate notice of a claim of unliquidated damages had troubling consequences. If, in addition to filing their replevin complaint in the District Court, Dehn Motor had sent a notice of claim to the Baltimore City Solicitor, the City would have been on notice that Dehn Motor might file an additional and significantly larger lawsuit. Provided with such notice, the City would have been on notice of the need to conduct a more extensive investigation, and would have probably provided the officers with counsel during the replevin proceeding at which they were called as witnesses or the officers would have obtained counsel on their own. Moreover, the City agreed to settle the replevin action unaware that another larger suit would follow, and, had it been put on notice of that, it would have probably requested, we presume, that Dehn Motor release it and its employees from liability for any future claims arising from the towing of Dehn Motor's vehicles. Thus, instead of aiding the City in preparing for a possible future suit, as is the purpose of the notice requirement, the replevin suit hindered that preparation by misleadingly suggesting that the City only faced an action of a limited nature. If it was on notice of an "action for unliquidated damages," it was a notice of a deceptively small amount of such damages.

Because the replevin action did not adequately inform the City "of its possible liability" in an action for unliquidated damages, Dehn Motor did not substantially comply with the notice requirement of the LGTCA. *Moore*, 371 Md. at 167–68, 807 A.2d 632. Therefore, the circuit court did not err in granting summary judgment in favor of the officers as to Dehn Motor's state law claims.

## II.

■ Dehn Motor contends that the circuit court erred in granting summary judgment on the grounds that it had failed to state a constitutional claim upon which relief could be granted under the Fourth and Fourteenth Amendments to the United States Constitution.[21] We disagree.

Once Officer Schultz and Sergeant Proctor moved for summary judgment, it was incumbent upon Dehn Motor to "bring forth evidence of a genuine dispute as to a material fact in order to proceed to trial." *Scroggins v. Dahne*, 335 Md. 688, 691, 645 A.2d 1160 (1994) (internal quotation marks omitted). Because the circuit court struck Dehn Motor's response to that motion on the grounds that it was filed the day before the hearing and almost a month after the day it was due, there was no written opposition to Officer Shultz and Sergeant Proctor's claim that the Baltimore City Code authorized them to have the vehicles towed for the court to consider.[22]

---

21. Dehn Motor also contends that the circuit court erred in granting summary judgment as to its failure to state a constitutional claim under Articles 19, 24, and 26 of the Maryland Declaration of Rights. But, the circuit court never addressed this issue and instead disposed of Dehn Motor's state claims solely on the basis of Dehn Motor's failure to comply with the LGTCA.

22. In their reply brief, for the first time on appeal, Dehn Motor makes the bald allegation that the circuit court abused its discretion in striking its last minute response to Officer Schultz and Sergeant Proctor's motion for summary judgment. As, generally, an appellant may not raise new issues in a reply brief, we decline to address that issue. *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md.App. 504, 535, 852 A.2d 1029 (2004).

Nonetheless, at the hearing on the parties' cross-motions for summary judgment, the court asked Dehn Motor's counsel what his response was to the officers' reliance on the Baltimore City Code in their joint motion, but no response specifically addressing that query was forthcoming. In the absence of a response, the circuit court found that the officers "were acting under the provisions of the City Code" when they towed the vehicles in question.

The code provisions cited by the officers prohibited the obstruction of streets and alleys,[23] authorized the towing of obstructing vehicles,[24] and permitted the removal of vehicles stored on private property in violation of zoning laws.[25] Given the failure of Dehn Motor to dispute the officers' claim that they acted pursuant to the Baltimore City Code, the circuit court did not err in granting summary judgment as to Dehn Motor's Fourth and Fourteenth Amendment claims. Moreover, that court, we observe, could have also granted summary judgment as to those federal constitutional claims on a ground which it rejected, namely, namely, that the vehicles were towed pursuant to the officers' community caretaking function.

The circuit court dismissed that claim, not because it did not believe the uncontroverted testimony of Officer Schultz and Sergeant Proctor that they had the vehicles towed because they posed an immediate chemical and fire hazard, but because the court did not think that community caretaking encompassed such an action. We disagree.

Community caretaking is "an umbrella that encompasses at least three other doctrines": (1) the emergency aid doctrine, (2) the automobile impoundment/inventory doctrine, and (3) the public welfare doctrine. *Wilson v. State*, 409 Md. 415, 430, 975 A.2d 877 (2009). The emergency aid doctrine allows police officers "to act without a warrant when they

---

23. Article 19, § 50–2; Article 31, § 6–3.

24. Article 19, § 50–11; Article 31, § 31–6.

25. Article 31, § 31–8.

reasonably believe a person needs immediate attention." *Id.* at 432, 975 A.2d 877. It "is justified because the motivation for the intrusion is to preserve life rather than to search for evidence to be used in a criminal investigation." *Stanberry v. State,* 343 Md. 720, 742–43, 684 A.2d 823 (1996) (quoting *State v. Carlson,* 548 N.W.2d 138, 141 (Iowa 1996)). The public welfare doctrine "encompasses a non-investigative, non-criminal role [that the police have] to ensure the safety and welfare of our citizens." *Wilson,* 409 Md. at 437, 975 A.2d 877 (quoting *Williams v. State,* 962 A.2d 210, 218 (Del.2008)). It may be invoked "[w]hen the police act to protect the public in a manner outside their normal law enforcement function." *Id.* at 435, 975 A.2d 877.

The emergency aid doctrine and the public welfare doctrine "often overlap" as both invoke the role of police officers in promoting and securing the safety of citizens. *Id.* at 432, 975 A.2d 877. When such a duty arises, the standard for assessing the lawfulness of police conduct under the Fourth Amendment is whether, absent a warrant, the police "possessed a reasonable basis for doing what they did," or, in other words, "whether there [was] evidence which would lead a prudent and reasonable official to see a need to act." *State v. Alexander,* 124 Md.App. 258, 277, 721 A.2d 275 (1998) (quoting 3 Wayne R. LaFave, *Search and Seizure* § 6.6(a), at 391 (3d ed.1996)).

■ In the instant case, the officers were acting as community caretakers when they had Dehn Motor's vehicles towed. Their purpose in doing so, as the undisputed facts showed, was to safeguard the community from the immediate and significant fire and chemical hazards that the cars posed. Officer Schultz described the fire hazard as "horrific," recalling how a fire had destroyed four houses under similar circumstances a week or two earlier. He testified that the cars were towed because of "the fire hazards [and] the environmental hazards that were immediate." Sergeant Proctor, moreover, was informed by the ECU detectives that the "cars present[ed] an immediate ... chemical and fire hazard to the community" and that "the removal of the vehicles would

resolve the hazardous situation." He had the cars towed to "remove the hazard."

The testimony of Officer Schultz and Sergeant Proctor clearly established that they were acting to remediate hazardous conditions that posed an immediate and significant threat to the community and that they had reasonable grounds to believe that those conditions existed based on what they personally observed and based on what the ECU detectives had advised after reviewing the situation. Lest any doubt remain that the officers were acting in a "non-investigative, non-criminal role," we need only recall that the officers permitted Mohamed to move any vehicles that blocked the alleyway that could be moved, even though they were parked in violation of the City Code.

■ Because the purpose of the officers was to "ensure the safety and welfare of our citizens," *Wilson,* 409 Md. at 437, 975 A.2d 877, and "there [was] evidence which would [have led] a prudent and reasonable official to [have seen] a need to act," *Alexander,* 124 Md.App. at 277, 721 A.2d 275, the officers acted reasonably in having the vehicles towed to remove the immediate chemical and fire hazards. Consequently, the circuit court did not err in granting the officers' motion for summary judgment on Dehn Motor's Fourth and Fourteenth Amendment claims because, in addition to granting it on the grounds that the officers were acting lawfully pursuant to the Baltimore City Code, it could have and should have also granted their motion on the grounds that they were acting as community caretakers when they had Dehn Motor's cars towed.[26]

---

**26.** We recognize that ordinarily an appellate court will affirm the grant of summary judgment only on the grounds relied upon by the motions judge. *See Eid v. Duke,* 373 Md. 2, 10, 816 A.2d 844 (2003). There are, however, exceptions to that rule. *Id.* at 10, 816 A.2d 844. One of those exceptions is that the grant of summary judgment will be affirmed on a ground not relied upon by the circuit court if the alternative ground is one that the motions judge would have had no discretion to reject. *Warsham v. Muscatello,* 189 Md.App. 620, 985 A.2d 156 (2009). That exception is applicable here.

## III.

Finally, we also affirm the circuit court's grant of summary judgment as to Dehn Motor's federal constitutional claims because the officers were protected from such claims by the qualified immunity they had when they had Dehn Motor's vehicles towed. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards,* —— U.S. ——, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012). To be clearly established, "existing precedent must have placed" the constitutional right "beyond debate." *Id.* (quoting *Ashcroft v. al–Kidd,* —— U.S. ——, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)). Furthermore, that right must not be a "broad proposition," but rather be "particularized" such that the "contours of the right are clear to a reasonable official." *Id.* at 2094 (quotation marks omitted). Finally, qualified immunity applies whether the mistake by the official is one of law, fact, or a mixed question of law and fact. *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009).

The next question is whether the police were required to obtain a warrant or court order before towing the vehicles, which were located on Dehn Motor's property, but which presented an immediate hazard to the community. Dehn Motor claims they were, citing four cases which it insists clearly established that the police could not tow vehicles, parked on their owner's property, without a warrant or court order, namely: *Duncan v. State,* 281 Md. 247, 378 A.2d 1108 (1977); *One 1995 Corvette VIN # 1G1YY22P585103433 v. Mayor and City Council of Baltimore,* 353 Md. 114, 724 A.2d 680 (1999); *Huemmer v. Mayor and City Council of Ocean City,* 632 F.2d 371 (4th Cir.1980); and *De Franks v. Mayor and City Council of Ocean City,* 777 F.2d 185, 187 (4th Cir.1985). But none of these cases suggest that it was necessary for officers to obtain a warrant or court order before

towing vehicles which posed an immediate threat to the community.

In *Duncan*, while the police were investigating a reported shoplifting complaint, they received a call from a homeowner who reported that two men had parked a car on the homeowner's lawn and then left. 281 Md. at 250–51, 378 A.2d 1108. The police, upon arriving at her home, noted that the vehicle parked on the homeowner's lawn matched the description of the car associated with the shoplifting complaint and began to search for the two men who had left it there. The officers found and arrested Cornell Smith and Sherman Duncan. When the two men denied any connection with the parked car, the officers proceeded to search the car "to verify ownership" and "secure" it. *Id.* at 252, 378 A.2d 1108. In the trunk of that vehicle, they found plastic trash bags filled with clothing. The clothing still had tags on. *Id.*

When Smith and Duncan's motions to suppress the clothing were denied and Smith was convicted of theft and Duncan was convicted of receiving stolen goods, they noted an appeal. Although this Court affirmed their convictions, the Court of Appeals took a different view. It reversed, holding that the search of the vehicle was not lawful, because the police did not have the authority to seize the vehicle. The Court reasoned that, since the car was on private property and "not impeding traffic or threatening public safety and convenience," the officers were not authorized to seize the car. *Id.* at 259, 378 A.2d 1108.

But the instant case is clearly distinguishable from *Duncan*. Unlike in *Duncan*, the vehicles towed by Officer Schultz and Sergeant Proctor were "threatening public safety" and, therefore, *Duncan* does not establish that the police, acting as community caretakers, could not have lawfully towed Dehn Motor's cars without a warrant or court order.

Nor does *One 1995 Corvette*, clearly establish a requirement that police must obtain a warrant or court order before towing vehicles. In that case, Weldon Connell Holmes was stopped by police because they had observed what they believed to be

a drug transaction take place between him and another individual. Holmes was arrested "on drug-related charges" and his car, where he had been seated when the suspected drug transaction had occurred, was seized by the police who then instigated a forfeiture proceeding. When Holmes objected to the introduction of drugs that had been found in the car, on the grounds that they had been obtained in an illegal search, the trial court excluded that evidence and dismissed the forfeiture proceeding. 353 Md. at 116–17, 724 A.2d 680. But, when the case reached the Court of Appeals, the only issue before that Court was whether the exclusionary rule applied to civil forfeiture proceedings, an issue which is not now before us. Moreover, *One 1995 Corvette*, had nothing to do with towing a vehicle that posed a hazard to the community and hardly established that Sergeant Proctor and Officer Schultz had to obtain a warrant or court order before towing Dehn Motor's vehicles.

Finally, Dehn Motor also cites two cases from the United States Court of Appeals for the Fourth Circuit in support of its shaky proposition that the officers needed a warrant or court order to tow its cars, from its property, when they posed a peril to the community. They are: *Huemmer v. Mayor and City Council of Ocean City* and *De Franks v. Mayor and City Council of Ocean City,* both of which dealt with an Ocean City parking ordinance. The ordinance at issue in those two cases allowed a property owner to have a vehicle towed if it was illegally parked on his property. To retrieve the car, its owner had to pay towing and storage charges without having an opportunity to contest the validity of the tow.

In *Huemmer,* the Fourth Circuit held that Ocean City's ordinance was "manifestly defective" because it did not allow for "notice and a hearing to establish whether or not the initial removal of the vehicle was rightful or wrongful." 632 F.2d at 372. Thereafter, Ocean City amended that ordinance to require that the owner of a towed vehicle be given notice, within one working day of the tow; that he be given a hearing, if he requested one, on the validity of the tow; and that such a hearing was to take place within twenty-four hours of the

hearing request. In *De Franks,* the Fourth Circuit held that Ocean City's post-tow notice and hearing satisfied constitutional requirements. 777 F.2d at 187. Neither of these cases remotely suggest that officers must obtain a warrant or court order before towing vehicles that pose a danger to the community.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**